[L. A. No. 4193.   In Bank.—September 20, 1916.]

## ED. KIMBOL, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

WORKMEN'S COMPENSATION ACT—INJURY RECEIVED IN COURSE OF, AND ARISING OUT OF, EMPLOYMENT.—To entitle an employee to compensation for an accidental injury under the Workmen's Compensation Act, the injury must not only be received in the course of the employment, but must also arise out of the employment.

ID.—WHEN INJURY ARISES OUT OF EMPLOYMENT.—The injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributory proximate cause, and which comes from a hazard to which the workman would be equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

ID.—GIVING WAY OF OVERLOADED FLOOR—INJURY TO EMPLOYEE WORKING BELOW — EMPLOYER IGNORANT OF CONDITION AND WITHOUT CONTROL OF FLOOR.—The claimant was employed as a dishwasher by the owner of a restaurant who was conducting his business in leased premises on the ground floor of a building. While working as such, an overloaded floor above the place where he was at work suddenly gave way, with the result that he was injured by a falling object.

This floor was not included in the lease under which the employer occupied the portion of the building devoted to restaurant purposes, and he had no control whatever thereof, and no knowledge that it was being used for storage purposes. It was in fact rented for a lodging-house, the lease containing a clause that it should not be used for any other purpose. *Held*, that the injury arose out of the employment of the injured employee, within the meaning of the Workmen's Compensation Act.

Id.—Special Exposure of Employee to Danger.—If the exposure of the employee to a particular danger differs substantially from the normal risk to which all are subject, if the employment necessarily accentuates and increases the danger to a higher degree than that to which persons generally are subjected, then it may fairly be held that there was such special exposure to such danger as warrants a conclusion that the accident arose out of the employment, even though unexpected or unusual and in no way actually anticipated.

Id.—Dangerous Condition of Working Place.—Injury to an employee which is due to the dangerous condition of the room in which he is required to work is an injury resulting from a "risk reasonably incident to the employment."

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Boyer & Beach, for Petitioner.

Christopher M. Bradley, for Respondent.

ANGELLOTTI, C. J.—*Certiorari* to review an award made by the Industrial Accident Commission to one Fred Douglas against petitioner, Ed. Kimbol, for injuries received by him by accident in the course of his employment by said Kimbol, and alleged and found to have arisen out of said employment.

There is no doubt that the injury to Douglas was sustained "by accident," within the meaning of our workmen's compensation law, and admittedly the accident happened "in the course of the employment." Our act requiring as an essential to compensation that the injury must not only be received in the course of the employment, but must also arise out of the employment (section 12), the claim is that the injury here did not arise out of the employment within the

meaning of our act.   A divided commission has found against this claim.   There is no dispute as to the material facts.

Kimbol was the owner of and was conducting a restaurant business on the ground floor of a building in Los Angeles. Douglas was in his employ as a dishwasher.   While working as such, the floor immediately above the place where he was at work suddenly gave way, with the result that he was struck by some falling object or objects, and injured.   The giving way of this floor was due to the fact that it was overloaded, a large quantity of bottled grape juice having been stored thereon.   This floor was not included in the lease under which Kimbol occupied that portion of the building devoted to restaurant purposes, and he had no control whatever thereof.   Nor did he have any knowledge that the floor above was being used for storage purposes.   It was in fact rented for a rooming or lodging house, and the lease contained a clause that it should not be used for any other purpose.

Under these circumstances can it fairly be held that the injury arose out of the employment?

The supreme judicial court of Massachusetts has said in regard to the meaning of the term "arising out of the employment" as used in workmen's compensation laws: "It [the injury] arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.   Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment.   But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would be equally exposed apart from the employment.   The causative danger must be peculiar to the work and not common to the neighborhood.   It must be incidental to the character of the business and not independent of the relation of master and servant.   It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employ-

ment and to have flowed from that source as a rational consequence." (*In re McNichols,* 215 Mass. 498, [L. R. A. 1916A, 306, 102 N. E. 697].) This appears to us to be a good general definition of the term "arising out of the employment," and we think it fairly includes such a case as this. It will be conceded, in view of the facts we have stated, that the place in which Douglas was employed was not an unsafe place in the sense that there was any structural defect therein likely to cause injury so long as the building was used for the purposes for which it was intended, and that the danger of a collapse of the ceiling of the restaurant and the collapse of such ceiling were due wholly to the unauthorized use by another of the floor above for storage purposes, and the consequent subjection of that floor to a greater burden than that for which it was designed. But because of this unauthorized use of the floor above for storage purposes those below were in fact in danger of injury from a collapse of the floor, and in that sense the place in which Douglas was required to do all his work was an unsafe place. The danger was one peculiar to that very place—an incident of the particular premises used as they were being used—and it is not unreasonable to say that Douglas was *specially* exposed to that danger by reason of his employment. Solely by reason of and in pursuance of such employment he was required to remain in this unsafe place exposed to this danger of a collapse of the ceiling of the room in which he was constantly at work. The risk was normally one incident to working in that place, one due solely to its unsafe condition. If this be so we are of the opinion that the injury may fairly be said, in view of the authorities, to have arisen out of his employment. All the circumstances being considered, there is a causal connection between the conditions under which the work was required to be performed and the injury. The resulting injury was a natural incident of the work in view of the conditions under which it was being done, one that would have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment. The danger was peculiar to the particular place in which the employee was required to work. It is true that the accident was not actually foreseen or expected, but this is not necessary. It is sufficient that after the event it appears to have had its ori-

gin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

The question of special exposure by reason of the employment has been considered in various cases. The general rule deducible therefrom is that if the exposure of the employee to a particular danger differs substantially from the normal risk to which all are subject, if the employment necessarily accentuates and increases the danger to a higher degree than that to which persons generally are subjected, then it may fairly be held that there was such special exposure to such danger as warrants a conclusion that the accident arose out of the employment, even though unexpected or unusual and in no way actually anticipated. (See *Martin* v. *Lovibond & Sons* (1914), 2 K. B. 227, 5 N. C. C. A. 985, and note; *Hoenig* v. *Industrial Commission,* 159 Wis. 646, [L. R. A. 1916A, 339, 8 N. C. C. A. 192, 150 N. W. 996]; *State ex rel. People's Coal & Ice Co.* v. *District Court,* 129 Minn. 502, [L. R. A. 1916A, 344, 9 N. C. C. A. 129, 153 N. W. 119]; *Adamson* v. *Anderson,* Workmen's Compensation Cases, 1913, p. 506, 2 S. L. T. 139.) It seems clear that this case is one in which the accident and injury to Douglas can fairly be held to have "arisen out of the employment" within the meaning of that term as it is defined in *In re McNichols,* 215 Mass. 498, [L. R. A. 1916A, 306, 102 N. E. 697], and the other authorities cited herein, and that the conclusion of the accident commission to that effect must therefore be sustained. As we have seen, it can make no difference that the danger was not known or anticipated. Nor can it make any difference that the employer was entirely without fault. The liability for compensation created by our law is not founded on any want of care on the part of the employer. Nor is it material that the dangerous condition of the place in which Douglas was working was due entirely to the fault of some third party. The room in which Douglas was required to do his work *had become* an unsafe place in which to be, because of the danger of a collapse of the ceiling thereof, and solely by reason of his employment in that unsafe place he was specially exposed to such danger. We have said that an accident arises "out of the employment" where "it is possible to trace the injury to the nature of the employee's work *or to the risks to which the employer's business exposes the employee,*" and that "it arises out of the occupation when there is a causal connec-

tion *between the conditions under which the servant works and the resulting injury."* (*Coronado Beach Co.* v. *Pillsbury,* 172 Cal. 682, [158 Pac. 212].) The italics are ours. Under the facts we apparently have here a risk to which the employer's business specially exposed the employee. The danger was a constant one, inherent in the place itself under the conditions there existing, and the injury was one which a person cognizant of those conditions would reasonably expect to occur. It has always been the law that it is the duty of the employer to use reasonable care to furnish an employee a safe place in which to do his work. If for *any reason,* whether due to the negligent or even criminal act of a third party or not, the place was in fact unsafe, the employer was liable to the employee for any injury due thereto, provided that if he had used reasonable care in the matter he would have known of the defect and would have remedied it. The condition as to the safety of the place in which the work was to be done is thus always a matter incident to the employment, and an injury arising from its unsafe condition has always been considered an injury arising out of the employment. Under the old law the employer's exemption from liability where he was not negligent in the matter existed solely because he was not negligent, and not because the injury did not arise out of the employment. Our industrial compensation system has dispensed altogether with the element of negligence on the part of the employer, but it still must remain true that injury to an employee, which is due to the dangerous condition of the very room in which he is required to do his work, is an injury resulting from a "risk reasonably incident to the employment." Of course there is no analogy between such a case as this and such cases as *Coronado Beach Co.* v. *Pillsbury,* 172 Cal. 682, [158 Pac. 212], and *Fishering* v. *Pillsbury,* 172 Cal. 690, [158 Pac. 215], in which it is held that there is no liability on the part of the employer to the employee for an injury inflicted by the "skylarking" of a fellow-employee, because such an injury does not arise out of the employment.

In view of the suggestion as to the impossibility of the employer insuring against such an accident as this, it is proper to observe that if, as we hold, the injury did arise out of the employment, it was one that would be covered by a policy insuring against liability for injuries to employees received

in the course of employment and arising out of the employment.

The award is affirmed.

Shaw, J., Sloss, J., and Lawlor, J., concurred.

HENSHAW, J., Dissenting.—I dissent.  The case is the first of its kind before this court, and because in my judgment the award is supported by an altogether strained and unwarranted extension of the language and meaning of our law, it has seemed to me fitting that I should express my views at length.

It is a part of familiar knowledge that the fundamentals of our compensation act are taken from the English law—a law which had been in existence for many years before the enactment of the similar measure by this state.  The phrases of paramount and controlling importance in measuring the right to an award, namely, that the injury must have been sustained "in the course of the employment," and also must have "arisen out of the employment," are adopted bodily from the English law.  As is to be expected, these phrases, as applied to accidents and injuries, came frequently before the English courts for interpretation.  With only the latter of the two are we here concerned.  Admittedly in this case the injury was sustained while the employee was properly engaged in his labors.  The one question calling for answer is whether, within the language and spirit of our law, it can be said that the accident "arose out of the employment."

In considering the vast number of cases that have arisen and continue to arise under the terms of the English act, and of the similar enactments adopted by our states, it will not create surprise to find amongst them extreme cases and very doubtful cases.  This is inevitably to be expected since the jurists called upon to consider these acts are jurists trained in the principles of the common law, from which principles these acts are a wide departure, and also because these jurists are called upon to construe and to apply to these new conditions new phrases of description and definition.  Nevertheless, in no one of these numerous adjudications which has passed under my review is there to be found any support for the extreme construction which is here given to our law in support of this award.

In so declaring I accept unreservedly the definition of the Massachusetts court in *In re McNichols,* which is adopted in the prevailing opinion, as being satisfactory and complete. But to my mind the very terms of that definition, in which the prevailing opinion finds support for this award, actually forbid it. I say this quite realizing the fact that my statement is necessarily a reflection upon my own powers of reasoning and understanding, or else that the language of the Massachusetts court furnishes a striking illustration of the grave limitations of English written words to convey exact thought.

It may not be amiss to consider for a moment precisely what these compensation acts design to accomplish. They were enacted under the sanction of the police power because it was believed that direct provision should be made for the support of an employee whose injuries grew out of his work, and for the maintenance of his family and dependents where, under similar conditions, his injuries resulted in his death, and it was decreed that the employer—the industry— in all such cases should bear the burden of this compensation, the employer in some cases being allowed, in other cases being compelled, to insure against the losses which might arise from these causes. Elsewhere I have pointed out that the interest of the state in seeing that an injured workman receives compensation during the period of his incapacity is just as great, whether that workman be injured in his hours of leisure or in his hours of labor, and equally that the loss to the workman and the economic loss to the state are just as great if the workman be injured in his hours of leisure as if he be injured in his hours of labor. Nevertheless, these laws limit their beneficence with much rigidity to injuries received by the employee during his hours of labor which injuries must also arise "out of the employment." If this last phrase "arise out of the employment," means any injury (not willfully occasioned by the employee himself) which he sustains because as an employee he is working at a given place—and this unquestionably is the meaning of the prevailing decision—then there was no occasion for the lawmakers to have used this phrase at all, for that construction is the exact equivalent of saying that a workman shall be compensated for any injury which he sustains during the course of his employment, or, in other words, while at work.

In the broadest sense, whenever accident and consequent injury befall a workman who is duly in the performance of his duties, it may be said that such accident and injury arose "out of his employment." But some of them arise out of the employment only because of the fact that by virtue of his employment the workman was at a given place at the given time when the accident happened. Is this latter class of accidents included within the meaning of our law? The prevailing opinion holds that it is. I am convinced that it is not. I construe our law to embrace only that class of injuries which may for convenience be described as "occupational injuries," precisely as we use the phrase "occupational diseases." To this broad class belong all injuries which result to an employee from the performance of his work, even though occasioned by his own negligent performance of it. Second, all of those injuries resulting to the employee, with or without negligence on his part, because of the employer's failure to perform some duty which he owes to his employee. And in this large class belong all of those cases where injury results from unsafe and inadequate appliances, place of labor, etc. And, third, all of those injuries resulting from extra hazard either inherent in the character of the labor or occasioned by the act of the employer.

Into one of these three classes must fall every injury for which compensation may properly be awarded, or otherwise there is no limitation whatsoever to the right of an award if the employee has been injured while at his labors. But it will not be disputed that our law does not grant compensation for every injury sustained while the employee is engaged in his labors. For example, it is not questioned that, saving in exceptional cases hereinafter distinguished, the employee is not entitled to compensation for injuries sustained by the so-called acts of God. Indeed this was very early held and decided by our accident commissioners in *Fensler* v. *Accident Commission* (1 Cal. Ind. Acc. Com. Dec. No. 21, p. 41). There an employee engaged in piling and unpiling bags of cement in a warehouse on a hot day was overcome by heat, and after laying down the general principle that the employer is not liable for accidents occurring by the act of God, it was found that this employee was especially exposed by his employment to the danger of sunstroke, and that his injury was therefore compensable, thus follow-

ing the unbroken line of authority of the English and American courts. Nor yet, saving in exceptional cases, is an injury compensable which is occasioned by the tortious act of a fellow-employee, or the tortious or negligent act of a stranger.

Touching injuries arising from the act of God, it is said by Mr. Ruegg (Ruegg's Employers' Liability and Workmen's Compensation, 8th ed., p. 338) : "The question has arisen, Could an operation of the laws of nature—as earthquake, flood, lightning, or extraordinary tempest—occasioning personal injury to a workman whilst engaged in his employment, be said to be 'accident arising out of and in the course of the employment?' It is thought not. It may be granted that but for the fact of his being engaged in the employment at the time, the accident would not have happened to him. In this sense it may be said to have happened to him in the course of his employment. But in what fair sense could it be held to have arisen *out of the employment?* The employment may have been a cause *sine qua non,* but we do not think it could be regarded even as an effective cause of the accident." As illustrating the application of the principle, and of the exception to its application, may be cited *Kelly* v. *Kerry County Council,* 42 Ir. L. T. 23, where a workman engaged in cleaning out gullies to prevent the road from being flooded was struck by lightning and killed. Compensation was denied him, the judge saying: "I am unable to find any special or peculiar danger from lightning to which these men were exposed from working on the road. . . . It is only under very special circumstances, when the employment of the workman exposes him to peculiar risk from lightning, not shared by men in other employments, that an accident by lightning can be said to arise out of his employment." The same principle was declared by the supreme court of Michigan in overruling an award granted by the Michigan industrial accident board in *Klawinski* v. *Lakeshore & Mich. Southern Ry. Co.,* 185 Mich. 643, [L. R. A. 1916A, 342, 152 N. W. 213]. Klawinski was a section laborer. During a violent storm, under directions of the foreman of the gang, all took refuge in a barn. A bolt of lightning struck the barn and killed Klawinski. It was conceded that he met his death in the course of his employment, but it was held that his death did not occur by reason of an accident arising out

of his employment.   Such also was the ruling of the supreme
court of Wisconsin in *Hoenig* v. *Industrial Commission of
Wisconsin,* 159 Wis. 646, [L. R. A. 1916A, 339, 150 N. W.
996, 8 N. C. C. A. 192], where Hoenig was killed by a stroke
of lightning while working on a dam in the Fox River, the
Industrial Accident Commission, notwithstanding the intro-
duction of certain testimony seeking to show that a work-
man so employed was exposed to an extra hazard from light-
ning, declined to consider the evidence sufficient to establish
this extra hazard and refused to grant an award.   The judg-
ment of the commission was sustained by the supreme court.
Upon the other hand, the exceptional cases where an award
from death by lightning has been sustained because of the
extra hazard growing out of the special occupation, are typi-
fied by *Andrew* v. *Failsworth Industrial Society Ltd.* (1904),
2 K. B. 32 (6 W. C. C. 11), where a bricklayer was killed by
lightning while working on a scaffold twenty-three feet above
the level of the ground.   Expert evidence was given showing
that his position exposed the deceased to extra hazard and
special danger from lightning.   The county court held under
this showing that compensation should be allowed, and the
award was sustained for the indicated reasons.   Such also
was the decision of the supreme court of Minnesota in *State
ex rel. People's Coal and Ice Co.* v. *District Court,* 129 Minn.
502, [L. R. A. 1916A, 344, 153 N. W. 119, 9 N. C. C. A.
129), under *certiorari* to review an award, where the driver
of an ice company, compelled by his duties to be out in
stormy weather, left his team and went toward a tall tree,
either for protection or in the performance of his duties soli-
citing orders.   He was killed by a bolt of lightning.   The
authorities are reviewed and the award sustained on the
ground of the unusual risk and special hazard.

It will be instructive at this point to consider other cases
where the question of extra hazard pertaining to the employ-
ment has been considered and the claim allowed or disal-
lowed.   In *Armitage* v. *Lancashire and Yorkshire R. R. Co.*
(1902), 2 K. B. 178, the accident happened to a workman
engaged in his work, through the willful wrongful act of a
fellow-workman, and it was held the accident did not arise
out of and in the course of his employment.   *Falconer* v.
*London etc. Ship Building Co.,* 3 Fed. 564, arose under the
following facts: The accident befell a workman through the

negligence of a fellow-workman who was indulging in horse-play, and it was held that the accident did not arise in the course of his employment. To the same effect are our own cases. In *Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682, [158 Pac. 212], an employee going down a flight of stairs in the performance of his duties was tickled by a fellow-employee. He fell and seriously injured his knee. Compensation was denied him upon the ground that the injury was not from an accident arising out of the employment or incidental to the employment. To the same effect is *Fishering* v. *Pillsbury*, 172 Cal. 690, [158 Pac. 215], where an employee lost the sight of an eye by a missile fired into it from a trick camera operated by a fellow-employee in sport. In the first of these cases this court accepts the unquestioned rule so frequently noted above, that the injury must be the result of a "risk reasonably incident to the employment." Upon the other hand, in *Challis* v. *London & S. W. Ry. Co.* (1905), 2 K. B. 154, an engine-driver received injuries resulting in his death through being struck by a stone thrown from a railway bridge at his engine by a malicious boy. Here, Collins, master of the rolls, uses the phrase so often found in the decisions "a risk incidental to the employment," and his exposition clearly shows the meaning with which he employs these words. For he says that an accident arising out of an employment necessarily involves the consideration of the question "What risks are commonly incidental to the particular employment in question?" And it is held that the temptation of boys to throw stones, whether done maliciously or heedlessly, is so well known that the risk to which the engine-driver was exposed from this source was an extra hazard of his business, even though it were not a hazard common to other businesses. And this is exemplified by the language of Cozens-Hardy, master of the rolls, in *Craske* v. *Wigan* (1909), 2 K. B. 635, where, discussing the Challis case, he says: "That case really turned on this: That there was evidence which satisfied the county court that there was an irresistible temptation to small boys to drop stones onto a train as it passes under a railway bridge. In that case a boy dropped a stone which hit the glass of the cab of the engine where the driver was, with the result that the fragments of glass were driven into his eye. We there held that that was a risk incidental to his

employment.  To quote a few words from my own judgment in that case.  I said: 'It seems to me that the risk of such an occurrence is one which may reasonably be looked upon as incidental to the employment of an engine-driver, though it might not be incidental to other employments. ' "  The principle that only risks incidental to the service are covered by the act stood established as the interpretation of the English law long before and at the time our own act, with identical language, was adopted.   (*Wilson* v. *Laing*, 46 S. L. R. 843.) This condition, namely, that the accident is *incidental to the employment*, must be found to exist in all cases, even those where the award is based upon the exceptional hazard.   Thus in *Rowland* v. *Wright* (1909), 1 K. B. 963, known as the stable-cat case, a stableman, in the recognized discharge of his duty, was taking his meal quietly in the stable when the cat, without any provocation, flew at him and bit him.   The cat was the proprietor's cat.   It remained in and about the stable at the instance of the proprietor.   For it and its conduct he was held responsible.   His employees were thus subject to this extra hazard at the instance of the employer, and the injury which resulted to this one thus became incidental to his employment, the court, in discussing the case in *Craske* v. *Wigan, supra,* declaring that "the stable-cat was really a part of the furniture of the stable.   The accident was just as much an accident arising out of his employment as if he had been kicked or bitten by a horse in the stable."   In *Nisbet* v. *Rayne etc.* (1910), 2 K. B. 689, a cashier was traveling in a railway carriage to a colliery, with a large sum of money for the payment of his employer's workmen.   He was robbed and murdered.   It was held that he was the victim of an accident within the meaning of the law, and that the extra hazard which he underwent in carrying this large sum of money was "a risk incident to his employment and likely to have been in the contemplation of the parties when Nisbet was engaged," Cozens-Hardy, master of the rolls, affirming this view upon appeal, and declaring that Nisbet was exposed to this special risk incidental to his employment.   The same view was taken and principle announced in *Anderson* v. *Balfour*, 2 I. R. 97, where a gamekeeper was attacked by poachers.   Notwithstanding the act of the poachers was criminal it was held that this extra hazard to which the gamekeeper was exposed was incidental to his occupation.

It is a generally accepted principle that risks to which all persons similarly situated are equally exposed are not risks incident to the business.

Having thus pointed out certain exceptions distinguishing those engaged in particular employments, and exempting them from the operation of the rule upon the ground of a special hazard incident to the employment, another class of cases now merits mention. The ordinary perils of a highway or of a crowded street are common to all upon the highway or street. Yet it is held that where the nature of one's employment compels his continuous presence on and use of the streets, and even perhaps where a special and particular service requires his presence upon a street for a limited time, if injured he becomes entitled to compensation, but always upon the same ground of the special hazard incident to the business. Thus, a collector was kicked by a passing horse while riding in the street on his bicycle in the course of his employment and was allowed compensation for the indicated reason. (*M'Neice* v. *Singer Sewing Machine Co.,* 48 Scot. L. Rep. 15.) To like effect is *Millar* v. *Refuge Assurance Co.,* 49 Scot. L. Rep. 67. And in *Martin* v. *Lovibond & Son* (1914), 2 K. B. 227, 5 N. C. C. A. 985, a drayman, whose duties took him into the street for many continuous hours while going his proper rounds, stopped outside a public house, left his dray, crossed the street, drank one glass of ale, and recrossing the street to his dray was run over and killed. The English court of appeal first declaring that the drayman was still in his employment during this temporary absence for refreshment, held that the street risk that he ran was incidental to his employment and that his hazard, since he practically spent his life upon the streets, was exceptional and that he was "exceptionally exposed to street accidents. . . . Whereas an ordinary member of the public not so exceptionally exposed would not be entitled to claim compensation." This principle was declared by the California accident commission in *Leary* v. *Fairchild, Gilmore etc. Co.* (Vol. 1, No. 3), where Leary, engaged in repairing pavements in the street was struck by an auto truck. And, finally, touching the proposition that it is not necessary that one's occupation should demand his continued presence upon the street, but that the same principle would apply to one who was required to be upon the street in the performance of some specially delegated duty,

it is sufficient to refer to Elliott on Workmen's Compensation Act, sixth edition, page 78, and to the language of Cozens-Hardy in *McDonald* v. *Owners etc.* (1908), 2 K. B. 926, where he says: ''If I send my domestic servant in the evening with a letter to a friend and he is knocked down by a motor omnibus on his way to my friend's house, I should be liable. If, however, he, having a night off, goes, as he is at full liberty to go, to the Franco-British Exhibition for his own amusement, and meets with an accident at the same spot, I take it that I should not be liable.''

I have heretofore said that all injuries to be compensable under our act must, in a broad sense, be occupational injuries, and that in the first subdivision will naturally fall all those injuries resulting to an employee and growing out of his performance of the work, even though the accident has its origin in his own negligent performance of it. The precise kind of accident or character of injury which an employee may thus sustain is immaterial, and the fact that it may be unusual or exceptional in character is equally immaterial. Thus in the case at bar, if this dish-washer had carelessly slopped water upon the floor and made it slippery, and then, taking up a knife for the purpose of cleaning it, had slipped and wounded himself with the knife, the accident would have been exceptional and unusual in character. But it would have arisen strictly out of the performance, though the negligent performance, of his duty. No one, I take it, will question the soundness of this classification, nor of the right of the employee to compensation for any injury so arising.

As little doubt can be entertained over the soundness of the second classification—the right of the employee to compensation where the employer has failed in a duty owing to the employee, for this is but one of the forms of the familiar common-law right of action. It is within this class, as I read the prevailing opinion, that the accident to Douglas is placed. It calls for detailed consideration later. The third class, entitling the employee to compensation when the injury results either from an extra hazard inherent in the character of the labor or occasioned by the act of the employer, is typified by the cases above cited, such as the Challis case, where the engine-driver was struck by the stone thrown by a malicious boy and the award was upheld upon the ground

that engine-drivers are exposed to an extra hazard inherent in the character of the work, and the Andrew case, where the award in the case of the bricklayer killed by lightning upon a high scaffold, was sustained upon like ground. The cases where liability is imposed upon the employer for extra hazard to his employees occasioned by his own act are typified by the Rowland, or stable-cat, case, and by the McNichol case, where the award was sustained because the deceased employee had been beaten to death by a fellow-workman in an intoxicated frenzy of passion, it being known to the employer that the offending workman did so become intoxicated, and did fall into violent fits of rage and would be liable to assault his fellow-workmen when in such condition, but that nevertheless he was retained in the service of his employer.

It is in this case that the definition of an injury arising out of the employment is given and found acceptable by this court. The definition, it is proper to say, is but a compilation of the utterances of English judges, and it will be of advantage in determining the meaning of the language to quote some of these utterances. Thus says Hardy, M. R., in *Butler* v. *Burton on Trent Union* (1912), W. C. Rep. 222: "We have heard an argument from counsel for the respondent that it did arise out of the employment because it took place on premises where Butler was engaged in working. If he was right in this argument, the words in the Act providing that the accident must arise 'out of' the employment might be omitted, and the words providing that the accident should arise 'in the course of' the employment alone be left. The provision that the accident must be an accident arising out of the employment has the meaning that the accident must arise out of some risk reasonably incidental to the employment. . . . There was nothing peculiar to his employment which rendered the risk of this accident happening greater than it would have been otherwise." And says Buckley, L. J., in *Fitzgerald* v. *Clarke & Son* (1908), 2 K. B. 796: "The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment." And says Kennedy, L. J., in the same case:

"The words [arising out of] appear to point to accidents arising from such causes as the negligence of fellow-workmen in the course of the employment, or some natural cause incidental to the character of a business." "We conclude, therefore, that an accident arises 'out of' the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it. That this is so appears from an examination of *Armitage* v. *Lancashire & Yorkshire Railway Co.,* *supra; Collins* v. *Collins* (1907), 2 I. R. 104; *Murphy* v. *Berwick* (1909), 43 Ir. L. T. 126; and *Blake* v. *Head* (1912), 106 L. T. 822—in each of which recovery was denied because the act of the third party was not a risk reasonably to be contemplated by the employee in undertaking the employment." (*Bryant* v. *Fissell,* 84 N. J. L. 72, [86 Atl. 458].)

Says Hardy, M. R., in *Craske* v. *Wigan* (1909), 2 K. B. 635: "I think it would be dangerous to depart from that which, so far as I am aware, has been the invariable rule of the Court of Appeal since these Acts came into operation, namely, to hold that it is not enough for the applicant to say 'the accident would not have happened if I had not been engaged in that employment or if I had not been in that particular place.' He must go further and must say, 'The accident arose because of something I was doing in the course of my employment or because I was exposed by the nature of my employment to some peculiar danger.' Unless something of that kind is established the applicant must fail, because the accident is not one arising out of and in the course of the employment. In my view we should not be administering law and justice if we did not hold that the learned judge was quite right. The appeal must be dismissed." And says Lord Salvesen, in *Kinghorn* v. *Guthrie* (1912–13), 50 Scot. L. Rep. 863, after setting forth with approval the language just quoted from *Craske* v. *Wigan:* "It is of course true that he would not have met with the accident unless he had been in that particular place, and that he would not have been in that particular place unless he had been engaged in that particular employer's work; but as the Master of the Rolls said, that is not enough; you must point to something in the nature of the employment that makes you peculiarly liable to a risk of that kind."

That it may not be thought they have been intentionally ignored, it is pertinent to refer specifically to the cases cited in the prevailing opinion as supporting this award. The first of these is *Martin* v. *Lovibond & Son*. That case has already been considered. The drayman left his truck and crossed the street, drank one glass of ale, and returning was injured. The decision points out that the drayman, with his long hours of street service was entitled, as a part of his employment, to adequate food, and that this included reasonable drink; that therefore he was engaged in his employment at the time the accident occurred, and though he received his injuries upon the street, the nature of his employment exposed him to a peculiar hazard which brought the case within the compensatory terms of the act. *Hoenig* v. *Industrial Commission* also has been mentioned, and is the case where an employee working on a dam in the Fox River was killed by lightning, but the holding was that there was no special hazard in his employment which would entitle him to compensation. *People's Coal and Ice Co.* has also been mentioned. That also is the case of a special hazard by lightning growing out of the nature of the employment. The last case is *Adamson* v. *Anderson* (1912–13), 50 Scot. L. Rep. 855. There a division of the Scottish court held that a workman who, during a violent gale, was engaged in erecting a stone planing-machine in an open yard, and who, while bending over, was struck and injured by a slate blown off the roof of an adjoining building, was entitled to compensation because the character of his employment exposed him to this extra hazard. The case was declared by the court to be one of the border line and doubtful cases. But immediately following that case, another division of the same court decided *Kinghorn* v. *Guthrie* (1912–13), 50 Scot. L. Rep. 863. There a carter, while leading his horse and wagon out of his employer's yard in the course of his employment, was struck by a piece of corrugated iron blown by a high wind from the roof of an adjoining building, and it was held that the accident did not arise out of his employment. A not very successful attempt was made by the learned judges to distinguish this case from the preceding, the basis of the distinction seeming to be that in the Anderson case the employee was bending over, looking at his work, and so was unable to detect his danger from the flying slate. It must be apparent,

I think, that no one of these cases affords any support for upholding the award for an accident arising under the circumstances of the present case.

Attention may now be directed to a consideration of the definition in the McNichols case, and to the statement in the prevailing opinion that "it seems clear that this case is one in which the accident and injury to Douglas can fairly be held to have arisen out of the employment, within the meaning of that term as it is defined in *In re McNichols.*" But before doing so, it should be pointed out that our own law is more specific than is the English law or the law of Massachusetts. With an apparent deliberate intent to limit the right of recovery to occupational or industrial accidents, it declares in terms the conditions which must exist before a recovery may be awarded, and one of those conditions is that the injury must have been "proximately caused by the employment." (Workmen's Compensation, Insurance and Safety Act, sec. 12, subd. 3, [Stats. 1915, p. 1081, sec. 2].)

Can it be said that this injury was proximately caused by the employment? If so, it is only in that very limited and discredited sense spoken of by Ruegg and again quoted, "It may be granted that but for the fact of his being engaged in the employment at the time the accident would not have happened to him. In this sense it may be said to have happened to him in the course of his employment, but in what fair sense could it be held to have arisen out of the employment? The employment may have been a cause *sine qua non,* but we do not think it could be regarded even as an effective cause of the accident." And this, as we have seen from the quotations above, is the precise view taken by all the English and American courts. Also it is the precise view taken by the Massachusetts court. Says that court, compensation is to be allowed "if the injury can be seen to have followed as a natural incident of the work." But this accident was not an incident of the work, natural or unnatural. Compensation is allowed if the injury can be seen "to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the *nature* of the employment." There was nothing in the nature of this employment that exposed the injured person to this injury. Would any one say that growing out of the nature of the employment of dish-washers they are liable to

be injured by the overloading of floors above the restaurants where they work? "It excludes," says the Massachusetts court, "an injury which cannot fairly be traced to the employment as a contributing, proximate cause." This is nearly the language of our own statute just quoted and discussed. "The causative danger must be peculiar to the work," as the lightning-stroke, or the stone-throwing at locomotive engineers. Was this danger in the slightest sense peculiar to the work? "It must be incidental to the character of the business." Will it be said that it is incident to the character of the business of a dish-washer that he shall be injured by an outside agency in crushing down a ceiling over his head? "It need not have been foreseen or expected," which is perfectly true of most accidents, the precise form which they may take being beyond the reach of exact foreknowledge. But the accident "must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." This was a risk not in the slightest connected with the employment. It was an accident that happened to the man because his employment happened to place him where an independent tortious act of a third person inflicted injury upon him.

But it is said that the place where the injured man worked was unsafe, and that because it was unsafe the employer is liable. This pays not the slightest regard to all the other elements, that the employer has failed in some duty, that the special condition was or should have been known to him. But the prevailing opinion reasons that because a place of employment has become unsafe, regardless of the acts and conduct of the employer, regardless of the means or measures by which it has been made unsafe, the employer is liable. Here, to my mind, is the grave mistake in reasoning leading to a most unwarranted extension of the law. The act of piling bottles of grape juice upon the floor above was negligent and tortious. It was the act of an independent third person, performed without the knowledge of the employer. Admittedly the employer was in no way responsible for this act. If, then, the employer is to be held responsible for all such kinds of accident upon the theory that the premises have become unsafe, and all this without regard to his chargeable knowledge of the fact, it inevitably results in declaring

the employer to be an insurer of his employees whenever accident has befallen them while engaged in their duties. There can be no distinction between a tortious act committed by negligence and one committed by design. The injury that results will be the same, the right of compensation to the injured person is the same (saving of course in the exceptional case where punitive damages may be added). What would be said, then, if the accident had occurred by the intent of the man who piled the bottles of grape juice to accomplish the result which his negligence brought about? The place of labor would have become equally unsafe. Is it possible that our law contemplates a recovery for such a wrongful act not within the legitimate hazard of a business? Assuming that a destructive bomb had either carelessly or intentionally been left in the room above, and by its explosion the same injury had resulted—the premises were made equally unsafe—is the employer liable? The length of time when the premises became unsafe, or the knowledge of the employer that they have become unsafe, is utterly eliminated. The premises become equally unsafe whether to the bomb is attached a one-minute fuse, or clockwork which will explode it in forty-eight hours. And for any and all of these acts it is held that the employer is liable in compensation. Yet every decision is to the contrary and limits the employer's liability to accidents legitimately connected with the hazards of the business. Let us take the case of the boy descending the flight of steps and made to fall by the tickling of a fellow-employee. Assume that, instead of so doing, the fellow-employee, in horse-play, had greased the steps and so occasioned the fall. Here would be another instance of the premises being unsafe and here, under the authority of the prevailing opinion, the employer would be liable. Yet the decisions, as we have taken pains to point out, hold the employer to be exempt from liability for the willfully tortious act either of fellow-employees or of outsiders, and for all the negligent acts of fellow-employees unless the negligent act has a bearing upon the performance of the duties of the injured employee. The boy who was tickled was in the performance of his duty. The other boy who negligently tickled him was not.

If the boy had greased the steps the employer would have been liable; but because he tickled his companion the em-

ployer is exempt. Can this be the law? And if the unsafeness of the place of labor is the sole controlling consideration, what becomes of the Kelley case, *supra,* the Klawinski case, *supra,* and the Hoenig case, *supra,* where precisely as in the Andrew case, *supra,* the men were killed by lightning-stroke? In all these cases indubitably the places of labor became as unsafe when the men were struck and awards denied as was the place where Andrew was struck and an award given. No one of these cases adopts for an instant the reasoning that an employer without fault can be held liable for an untoward and unexpected injury occasioned by act of God or a third person, nor accepts the theory that an employer may so be held liable because at the instant of the accident the place of labor had become unsafe. So far as all the adjudications go, it is uncontroverted that acts by outside agencies willfully tortious or negligently done are not acts arising out of the employment, even though they make the place of labor unsafe, unless peculiar and exceptional circumstances distinguish them; a familiar proposition typified, as has been said, by such cases as the Challis case and the Bryant case.

In my judgment the award should be annulled.

Lorigan, J., and Melvin, J., concurred.