[Civ. No. 5367.   Third Appellate District.—May 3, 1935.]

IVER  PAULSEN,  Petitioner,  v.  INDUSTRIAL  ACCI-
DENT  COMMISSION,  Respondent.

A. L. Cowell and Martin Thuesen for Petitioner.

Everett A. Corten, Arthur I. Townsend and Bronson, Bron-
son & Slaven for Respondent.

PULLEN, P. J.—Petitioner seeks by this writ to review the findings and award of the commission wherein the applicant was denied the relief sought.

The facts are brief and undisputed. Petitioner Iver Paulsen was employed in the capacity of general ranch laborer by H. Bigelow, who was the owner of a large band of sheep which had been pastured during the winter and early spring on lands near Friant in the county of Fresno. On April 20, 1934, the order was given to move the sheep from their winter pasturage to the summer range in the Sierra Nevada Mountains. Paulsen and another were assigned to the task of driving the sheep to the range. It was the usual custom to move the sheep along the highway until noontime, when one of the men prepared the meal while the other man held the sheep together and kept them out of the road. The first midday stopping place was the usual place where sheepmen and cattlemen had long been accustomed to stop. A truck from the Bigelow ranch had preceded the sheep and left the necessary cooking equipment, food and water for the preparation of this meal at this point. When the sheep and herders reached this point petitioner excavated a shallow trench approximately 100 feet from the roadway and therein built a fire of twigs and branches gathered from the nearby trees and brush. As he was seated on a stone near the fire stirring the contents of a kettle, an explosion occurred which caused some foreign matter to strike petitioner in the eye resulting in the loss of sight in the eye and its subsequent removal. The surgeon who attended petitioner found a portion of a copper shell of a dynamite cap in the eye.

A road construction crew a short time before had been engaged in working along this highway and supposedly a cap was dropped at the place where petitioner built his fire, which, coming in contact with the heat of the fire, exploded, causing the injury of which complaint is made.

Two questions are submitted by respondent: First, whether the injury to petitioner was proximately caused by an injury arising out of and in the course of his employment, and secondly, whether petitioner had laid a proper foundation for his petition for review.

The conclusion of the commission in this matter was based upon the rule expressed in *Storm* v. *Industrial Acc. Com.,* 191 Cal. 4 [214 Pac. 874]. In that case, Storm, an

apprentice painter was employed to sandpaper the wall of an unoccupied dwelling which the employer was renovating under contract. Just prior to the accident the employee lit a cigar to smoke while he worked, and a spark from the match as he tossed it away came in contact with a dynamite cap which in some unknown manner had been placed on a window sill in the room, which caused an explosion, resulting in the loss of his sight. How the dynamite cap came to be there was unknown. It was established it was not placed there by the employer or by any of his men, nor were dynamite caps used in connection with the work. The commission awarded compensation to Storm but the award was annulled on the ground the injury was not proximately caused by the employment because the risk was not one necessarily incident thereto. Petitioner insists that the court in the Storm case by its declaration that an injury for which compensation may be awarded must ''arise out of and in the course of the employment,'' not only overlooked the provisions of the act that it be liberally construed but limited the scope of the act beyond the intent of the legislature, as section 21 of article XX of the Constitution, which authorized the establishment of a system of workmen's compensation, does not require that compensable injuries must arise out of employment but for relief from consequences of injuries ''in the course of employment'', an expression found also in the title of the act. Regardless, however, of the merits of this argument we believe the present case and the Storm case can be differentiated upon the facts.

In the Storm case the smoking of the cigar and the dropping of the match were not a part of the duty of the injured employee. In the instant case, however, petitioner was required by the terms of his employment to build a campfire for the purpose of preparing the noonday meal for himself and his fellow employee. No stove was furnished for this purpose, and the digging of a hole in the ground and the building of a campfire therein was a customary and essential part of his employment. That there was a concealed hazard in his employment is established by the facts and the experience of petitioner. He was injured because of a condition of the instrumentality he was compelled to use in doing his work; therefore, we must conclude his injury was proximately and directly caused by his employment and arose out of it. If Paulsen had not been employed it is

possible he nevertheless might have passed that way and built a campfire in the identical spot and suffered injury, but he would not have been required to do so. The hazard to the public generally was not the same as that imposed upon petitioner as an employee whose job itself was to build a campfire upon the ground and there prepare the food for himself and his companion.

Counsel for petitioner cite a number of hypothetical situations that would change the result in the Storm case. Suppose, as they say, a point of a rusty nail had been protruding from the wall but concealed from view and in the course of the sandpapering by the employee he had injured his hand on the nail and suffered infection; without doubt such an injury would be considered as arising out of the employment although it would be impossible to show how or why the nail was in that position, and its presence there might be most unusual. Or if a dynamite cap had been imbedded in the plaster and the employee had in the process of sandpapering caused the cap to explode, it cannot be claimed that the employer would not be liable because of the novelty of the situation. In each instance cited the workman would have been injured because of his employment and he would not have suffered the injury if he had not been required by the terms of his employment to do the thing which he was doing when hurt. There was nothing in the duty of Storm in the sandpapering of the walls which required him to light a cigar or drop his match where the cap lay, whereas in the present case the preparation of the meal in the manner and in the vicinity was according to the express terms of the employment.

The leading case on the question as to when an injury arises out of and in the course of the employment is *In re McNicol et al.*, 215 Mass. 497 [102 N. E. 697, L. R. A. 1916A, 306], where it is said:

"The first question is whether the deceased received an 'injury arising out of and in the course of his employment', within the meaning of those words in part 2, Sec. 1 of the act. In order that compensation may be due the injury must both arise out of and also be received in the course of the employment. Neither alone is enough.

"It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the

act, and with precision exclude those outside its terms. It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.''

In the case of *London etc. Co.* v. *Industrial Acc. Com.*, 202 Cal. 239 [259 Pac. 1096, 54 A. L. R. 1392], in which an award was affirmed for the death of an employee as a result of the falling of the walls of a building in the Santa Barbara earthquake, it was declared that if the injury had been the direct result of the earthquake the award could not be sustained because ''there must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of the injury''. But it was found the building in which the employee was required to work was defective and he was thereby exposed to a risk of being injured by an earthquake which was greater than that to which the public generally was exposed, and therefore his injury arose out of his employment.

We therefore believe the injury sustained by petitioner arose out of the employment and was compensable.

The second point presented by respondent is that the petitioner failed to properly present to the commission

in his petition for a rehearing the reasons or grounds why the findings and award were incorrect. After the filing of the order of the commission denying compensation, a petition for rehearing was filed setting forth the grounds therefor as follows: 1. That the award and decision are contrary to the facts and are contrary to the evidence. 2. That the award and decision are contrary to the law. 3. That the award and decision are contrary to the law and evidence and the facts; therein failing, so it is urged, to set forth the reasons wherein the findings and award were erroneous.  ·

Section 64 (c) of the Workmen's Compensation Insurance and Safety Act, chapter 176, Statutes of 1913, requires that the application for a rehearing shall set forth specifically and in full detail the grounds therefor, and all objections not set forth in the application shall be deemed waived.

While the petition for rehearing is not to be considered as a model nor are we to be construed as approving this procedure, nevertheless, it was obvious from the order that the commission considered that it was bound by the rule enunciated in the Storm case, and there being no controversy as to the facts involved, the commission was informed the point relied upon by petitioner was the application of that rule to the facts. Inasmuch as the act itself enjoins upon the court and commission a liberal construction in the application of the act, we do not under the circumstances believe that petitioner should be penalized for his failure to· be more specific in his application for rehearing.

For the reasons given, therefore, the order of the commission should be annulled with directions to determine the amount to be awarded petitioner for the injuries sustained. It is so ordered.

Plummer, J., and Thompson, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1935.