[L. A. No. 23872. In Bank. Feb. 3, 1956.]

MARCO J. MADIN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, JAMES R. RICHARDSON et al., Respondents.

Higgs, Fletcher & Mack for Petitioners.

Everett A. Corten, Daniel C. Murphy and Edward A. Sarkisian for Respondents.

CARTER, J.—Petitioners Madin and his insurance carrier seek the annulment of an award of workmen's compensation to James Richardson and Lethia Richardson, his wife.

At the time hereinafter mentioned, Madin owned certain premises with 14 rental units and the Richardsons were living in one of these rental units. Madin employed the Richardsons to act as caretakers and managers of the property and collect the rent. They were on duty 24 hours a day and were available to meet any problems that arose during those hours. For this they received 10 per cent of the rentals and a discount on the rent of the unit occupied by them; Richardson was also to receive $1.50 per hour for any day labor performed by him.

About 2 o'clock in the morning on July 7, 1952, while the Richardsons were in bed, a bulldozer, which was being used on property in the neighborhood, ran wild after being started without authority by some boys and rammed into the unit occupied by the Richardsons, pushing them while in their beds through the walls of the unit and causing the injuries for which compensation was awarded. The facts in regard to the action of the bulldozer are fully set forth in *Richardson* v. *Ham,* 44 Cal.2d 772 [285 P.2d 269], which involved an action by Richardson and others for the alleged negligence of Ham Brothers, the owners of the bulldozer, in permitting the bulldozer to remain on the property where it was being used without safeguards against its being started. Madin had no control over the bulldozer or interest in the work being done by it; nor did he have any connection with the boys who started it on its destructive course.

Petitioners concede that the injuries occurred in the course of employment but say they did not arise out of the employment, and contend that section 4453 of the Labor Code, *infra,* and its interpretation and application to Mrs. Richardson are unconstitutional.

■ Certain principles recently stated by this court are applicable to the facts of this case: "Though an injury to be compensable must arise out of the employment, that is, occur by reason of a condition or incident of employment, the injury need not be of a kind anticipated by the employer nor peculiar to the employment in the sense that it would not have occurred elsewhere. (*Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798].) ■ If we look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributory cause. (*Colonial Ins. Co.* v. *Industrial*

*Acc. Com.,* 29 Cal.2d 79 [172 P.2d 884].) Where a person is required to be on the streets in the course of his employment and falls to the street, the resulting injury arises out of the employment. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 194 Cal. 28 [227 P. 168].) And finally '. . . reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employe.' (*Truck Ins. Exch.* v. *Industrial Acc. Com.,* 27 Cal.2d 813, 816 [167 P.2d 705]; *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 492 [175 P.2d 823]; *Industrial Indem. Exch.* v. *Industrial Acc. Com.,* 26 Cal.2d 130 [156 P.2d 926].)'' (*Employers Mut. Liab. Ins. Co.* v. *Industrial Acc. Com.,* 41 Cal.2d 676, 679 [263 P.2d 4].)

 Consonant with those principles it has been held in various situations that injuries occurring in the course of employment also arise out of the employment and hence were compensable although the factor which put in motion the force causing the injury was something over which the employer had no control and with which he had no connection. In *Kimbol* v. *Industrial Acc. Com.,* 173 Cal. 351 [160 P. 150, Ann.Cas. 1917E 312, L.R.A. 1917B 595], the employee was injured when the ceiling of the room in which he was working fell because of an overloading of the floor above; the employer had no control over the upper floor, the overloading being done by a third person with whom he had no connection. *Pacific Indem. Co.* v. *Industrial Acc. Com.,* 86 Cal.App.2d 726 [195 P.2d 919], involved an injury from a falling window on the employer's premises which fell because of an explosion on nearby premises with which the employer had nothing to do. The injury occurred in *Enterprise Dairy Co.* v. *Industrial Acc. Com.,* 202 Cal. 247 [259 P. 1099], when an earthquake caused a wall on premises adjoining those of the employer to fall through the roof of the employer's premises and broke milk bottles which the employee was handling in the course of his employment. In *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 804 [214 P.2d 41], the employee, a bartender, was killed by a shot fired by a customer's wife at the customer during an altercation between them in the bar. In *Paulsen* v. *Industrial Acc. Com.,* 6 Cal.App.2d 570 [45 P.2d 285], the employee, a sheepherder, lost his eye from the explosion of a dynamite cap in his campfire, the cap apparently having been left where he built his fire, by a road crew with which his employer had no connection.

There are cases apparently to the contrary (see *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 43 Cal.App.2d 292 [110 P.2d 676], criticized in *Industrial Indem. Co.* v. *Industrial Acc. Com.*, *supra*, 95 Cal.App.2d 804; *Storm* v. *Industrial Acc. Com.*, 191 Cal. 4 [214 P. 874]), but they fail to give the liberal construction required of workmen's compensation laws and are not in accord with the authorities above cited. The statement in *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 512 [247 P.2d 697], that there must be some connection between the injury and employment, other than that the employment brought the injured party to the place of injury, is not of importance here because the court was there speaking of course of employment and held that the employee was at the time engaged in a personal recreational activity of his own off his employer's premises and "unrelated to the employment."

The commission's award here may be supported by taking the narrow view that a portion of the employer's premises injured the Richardsons—the falling walls and glass from the impact of the bulldozer (see *Enterprise Dairy Co.* v. *Industrial Acc. Com.*, *supra*, 202 Cal. 247). It is also supported on the broader view expressed in the Kimbol case, *supra*, where the court said that the injury was ". . . due wholly to the unauthorized use by another of the floor above for storage purposes, and the consequent subjection of that floor to a greater burden than that for which it was designed. But because of this unauthorized use of the floor above for storage purposes those below were in fact in danger of injury from a collapse of the floor, and in that sense the place in which Douglas was required to do all his work was an unsafe place. The danger was one peculiar to that very place— an incident of the particular premises used as they were being used—and it is not unreasonable to say that Douglas was *specially* exposed to that danger by reason of his employment. Solely by reason of and in pursuance of such employment he was required to remain in this unsafe place exposed to this danger of a collapse of the ceiling of the room in which he was constantly at work. The risk was normally one incident to working in that place, one due solely to its unsafe condition." (*Kimbol* v. *Industrial Acc. Com.*, 173 Cal. 351, 354 [160 P. 150, Ann.Cas. 1917E 312, L.R.A. 1917B 595].) Thus here the employer's premises became unsafe because of the uncontrolled bulldozer. Where the injury occurs on the employer's premises, while the employee is in the course of the employment, the injury arises out of the em-

ployment unless the connection is so remote from the employment that it is not an incident of it. In *Industrial Indem. Co.* v. *Industrial Acc. Com.*, *supra*, 95 Cal.App.2d 804, 807, after calling attention to the requirement for liberal construction of workmen's compensation laws, Mr. Justice Bray stated: "One of the departures was in 'street risk' cases, of which *Frigidaire Corp.* v. *Industrial Acc. Com.*, 103 Cal. App. 27 [283 P. 974], is an example. . . .

"Then there are the 'horseplay' or 'skylarking' cases. At first in California recovery was not permitted an employee who was injured through horseplay or skylarking of his fellow employees. . . . But in *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], this rule was changed and the holding in *Coronado Beach Co.* v. *Pillsbury*, *supra* [172 Cal. 682 (158 P. 212, L.R.A. 1916F 1164)], and the other cases expressly overruled. . . .

"Then we have cases where the courts have held that because the thing that injured the employee was an instrumentality of the employer, the injury is compensable even though the force which actually was responsible for the injury came from outside the employer's premises.

"The first case on this subject was *Kimbol* v. *Industrial Acc. Com.*, 173 Cal. 351 [160 P. 150, Ann.Cas. 1917 312, L.R.A. 1917B 595]. . . .

"In *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 86 Cal. App.2d 726 [195 P.2d 919], the employee was injured when an explosion in a plant across the street caused a window in the plant where the employee was working to strike the employee. . . . Again in *Enterprise Dairy Co.* v. *Industrial Acc. Com.*, 202 Cal. 247 [259 P. 1099], where an employee was injured by the falling, due to an earthquake, of a two-story building adjoining his employer's garage, in which the employee was then working, the court held the employer liable, because the falling of such building through the garage roof broke milk bottles which the employee was handling, and hence 'he was injured by the broken glass and not by the earthquake.' While this and similar cases labor somewhat to show that the actual substance which injured the employee was an instrumentality of the employer, a real analysis of the facts and rulings in these cases shows that actually the courts were allowing compensation because his employment brought the employee into what became a position of danger even though that danger was not, and in many instances could not, have been foreseen either by the employer or employee,

and even though the risk was not peculiar to the particular location.

"As far back as 1930, a writer in 18 California Law Review, page 562, said: 'When an employment places an employee at any given place to do his work, indoors or outdoors, and the employee so placed is injured because at work in that spot, compensation should be awarded for the injury, except in the field of disease where it is needed to distinguish industrial from non-industrial diseases.' The trend of the decisions in this state since that date has been to support that doctrine, although, as pointed out, the courts have been reluctant to use that language. . . .

"The latest trend is shown by statements such as the following: 'The theory upon which the workmen's compensation laws were enacted was that evidence should not be required to establish all the factors of the workman's environment, but that in order to receive an award he needs show merely that his work brought him within the range of danger by requiring his presence in the precincts of his employer's premises at the time the peril struck. . . . Compensable injuries need not be of the kind anticipated by the employer or peculiar to the employment. . . . It is sufficient that the injury results from a danger to which he was exposed as an employee.' (*Pacific Indem. Co.* v. *Industrial Acc. Com., supra,* 86 Cal.App.2d 726, 728.) This case also cites with approval the following from *Harvey* v. *Caddo De Soto Cotton Oil Co.,* 199 La. 720 [6 So.2d 747, 750]: ' ". . . that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore . . . the accident arose out of, and was incident to the employment." ' (*Pacific Indem. Co.* v. *Industrial Acc. Com., supra,* p. 733.) Referring to a Louisiana case (which is not cited) the court said (p. 732): 'His death was due to the fact that his work necessitated his presence there. Therefore, under a liberal interpretation of the compensation act, the accident arose out of and was incidental to the employee's duties. The court there declared that the test, in cases where the accident originates from a force disconnected with the employment, is whether the employee is exposed to greater danger by reason of his assignments than that to which the public is subjected, whether the cause is an act of God or of a mundane inhabitant.' ' "It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes." ' "

Petitioners assert that Mrs. Richardson was earning less

than $15 per week and that an award based on $15 per week earnings under section 4453 of the Labor Code (Workmen's Compensation Laws) deprived them of property without due process of law.

The commission found that Mrs. Richardson's injuries caused temporary disability from July 8 to December 15, 1952, but awarded nothing because she sustained no "wage loss"; that the injury caused a permanent disability of 21 per cent entitling her to $9.75 per week for 84 weeks in the total sum of $819 "based upon minimum earnings." [8] Section 4453 provided: "In computing average annual earnings for purposes of temporary disability indemnity only, the average weekly earnings shall be taken at not less than . . . ($15) nor more than . . . ($53.85). In computing average annual earnings for purposes of permanent disability indemnity, the average weekly earnings shall be taken at not less than . . . ($15) nor more than . . . ($46.16). Between these limits the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows: . . ."* By that section the Legislature has in effect said that the earning capacity of any person covered by the workmen's compensation laws shall not be computed at less than $15 per week. We find nothing arbitrary or unreasonable in such a provision. The Legislature could reasonably conclude that the great bulk of workers would have earnings of at least that sum. In *New York Cent. R. Co.* v. *Bianc,* 250 U.S. 596, 602 [40 S.Ct. 44, 63 L.Ed. 1161], the court was concerned with the contention that a provision for compensation for disfigurement where there was no showing of inability to work was a denial of due process. The court held that it was reasonable to assume that disfigurement would interfere with the ability to find gainful employment and also that: ". . . impairment of earning power is [not] the sole ground upon which compulsory compensation to injured workmen legitimately may be based. . . . In view of this, and there being no specific finding of such impairment in these cases, it is proper to say that in our opinion the 'due process of law' clause of the Fourteenth Amendment does not require the States to base compulsory compensation solely upon loss of earning power.

---

*It was amended in 1955 to change the figures to $23.08 and $61.54 on temporary disability and to $23.08 and $53.85 on permanent disability. (Stats. 1955, ch. 956.)

". . . As was stated in the Arizona case, *ante*, 429 [Arizona Employers' Liability Cases, 250 U.S. 400 (39 S.Ct. 553, 63 L.Ed. 1058, 6 A.L.R. 1537)]: 'If a State recognizes or establishes a right of action for compensation to injured workmen upon grounds not arbitrary or fundamentally unjust, the question whether the award shall be measured as compensatory damages are measured at common law, or according to some prescribed scale reasonably adapted to produce a fair result, is for the State itself to determine.' And we see no constitutional reason why a State may not, in ascertaining the amount of such compensation in particular cases, take into consideration any substantial physical impairment attributable to the injury, whether it immediately affects earning capacity or not." In *Rich Hill Coal Co.* v. *Chesnut*, 355 Pa. 13 [47 A.2d 801, 806], the court said: "Section 306 of the Act of 1937 provides that the compensation for injuries resulting in total disability and for all disability resulting from certain permanent injuries there specified should be not less than $12 per week. Plaintiffs urge that this minimum might result in the compensation being greater in some cases than the amount of wages previously earned by the employee. The testimony indicated that the prescribed minimum exceeded wages only to an extremely trifling extent and for very limited periods. A wage of $12 per week is probably less than is earned by all but a negligible few—no such cases were shown to exist in the anthracite industry—so that this complaint is essentially de minimis. Moreover it has been held that such payments do not violate the due process clause of the 14th Amendment to the Federal Constitution. *New York Central R. Co.* v. *Bianc*, 250 U.S. 596, 602 [40 S.Ct. 44, 63 L.Ed. 1161], affirming the decision of Judge Cardozo in *Sweeting* v. *American Knife Co.*, 226 N.Y. 199, 200 [123 N.E. 82, 83]." *West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711 [180 P.2d 972], did not involve any question of constitutionality.

The awards are affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.