[S. F. No. 9633.   In Bank.—August 15, 1921.]

GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LIMITED (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMIS-SION et al., Respondents.

[1] Workmen's Compensation Act—Award of Commission—Scope of Review.—The findings and conclusions of the Industrial Acci-dent Commission on questions of fact are conclusive and final, if supported by substantial evidence, and cannot be reviewed by the supreme court.

[2] ID.—BUSINESS ALTERCATION BETWEEN EMPLOYER AND STRANGER—SHOOTING OF EMPLOYEE—INJURY ARISING OUT OF EMPLOYMENT.—Under the Workmen's Compensation, Insurance and Safety Act of 1917, an injury received by an automobile tire-repairer while engaged in the performance of his work from having been struck by a bullet fired by his employer at a stranger in an altercation between the employer and the stranger over the purchase of gasoline was an injury arising out of his employment, although the accident was unusual and one not anticipated or peculiar to the employment.

PROCEEDINGS on Certiorari to review an award of the Industrial Accident Commission. Award affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander for Petitioners.

A. E. Graupner, Warren H. Pillsbury and H. C. Kelsey for Respondents.

SHURTLEFF, J.—*Certiorari* to review an award of the Industrial Accident Commission granting compensation to Samuel Shrout, an employee of one Fred Barr, who, with the General Accident, Fire & Life Assurance Corporation, are the petitioners, hereinafter called the defendants.

The following is a brief statement of the facts:

The petitioner, Shrout, was employed as an automobile tire-repairer by Barr in the latter's garage in San Francisco. During the noon hour of the day upon which Shrout was injured two men, strangers to Barr as well as Shrout, drove their automobile into Barr's garage and asked him to serve them gasoline. Shrout at the time was repairing the tires on an automobile some forty or fifty feet from the point where the altercation hereinafter mentioned occurred, which was

2. What is accident arising out of and in course of employment within purview of workmen's compensation acts, notes, Ann. Cas. 1913C, 4; Ann. Cas. 1914B, 498; Ann. Cas. 1915A, 126; Ann. Cas. 1915C, 779; Ann. Cas. 1916A, 388; Ann. Cas. 1916B, 1293; Ann. Cas. 1916D, 584, 694; Ann. Cas. 1916E, 166; Ann. Cas. 1917D, 195, 199, 209; Ann. Cas. 1917E, 321, 332; Ann. Cas. 1918D, 683; Ann. Cas. 1918E, 813, 1168; L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

Conclusiveness of finding as to whether injury was one "arising out of and in course of the employment," note, L. R. A. 1918F, 915.

the character of the work he was employed to perform.   One of the men in the automobile, addressing Barr, said, "Can we have some gasoline?" to which Barr replied, "Yes, if I have any gas."   The tank from which Barr had been serving gasoline proved to be empty, and he stepped over to connect with another tank, when one of the men "hollered" to hurry and give them the gas, to which Barr replied, "Don't talk to me like that or you get no gas at all," whereupon both men jumped out of their automobile and struck him. At this point one of Barr's mechanics returned from his lunch and immediately came to Barr's assistance.   During the quarrel Barr stated he was going to "ring up the police" and started up the steps leading to his office, which was one floor above the main floor of the garage and where, presumably, his telephone was located.   One of the two men followed him, and as Barr entered his office he saw all of his money lying on his desk where he had left it when called to serve the two strangers and other customers who had immediately preceded them.   Barr testified, "I pushed it [money] to one side and the gun was lying there and I grabbed it, and when he saw me do that he started to run downstairs and . . . I followed him right to the top of the stairs, and he jumped from the top to the main floor and I fired the shot right after."   The bullet missed the fleeing man, struck the floor and, glancing, hit Shrout, who, as has been said, was repairing tires in another part of the garage, and inflicting the wound forming the basis of the award.   So far as appears, Shrout took no part whatsoever in the controversy.

Counsel for defendants, with considerable force, insist that the injury to Shrout did not arise out of and in the course of the employment, and for that reason he is not entitled to compensation under the act upon which this proceeding is founded.   It is true that in order to uphold the award the injury suffered by Shrout must have been one "arising out of and in the course of the employment."   (Sec. 6 [a], Workmen's Compensation, Insurance and Safety Act of 1917; *Coronado Beach* v. *Pillsbury,* 172 Cal. 682–684, [158 Pac. 212].)

[1]   The findings and conclusions of the commission on questions of fact are conclusive and final, if supported by substantial evidence and cannot be reviewed by this court. (Workmen's Compensation, Insurance and Safety Act of

1917 (California), sec. 67 [c]; *Western Supply Co.* v. *Pillsbury,* 172 Cal. 407–418, [156 Pac. 491].) Our jurisdiction is expressly confined to inquiring into and determining the "lawfulness" of the award (Workmen's Compensation, Insurance and Safety Act of 1917, sec. 67 [a]), and if, therefore, it is supported by substantial evidence, it must be affirmed.

In this case the commission found that "the applicant, Samuel Shrout, . . . while employed . . . by defendant Fred Barr . . . sustained an injury occurring in the course of and arising out of his employment as follows: The employer became involved in a controversy with certain customers and in the course thereof shot at one of them and the bullet struck the applicant [Shrout] . . . causing a severe wound and fracture of the leg." That the accident occurred in the course of the employment is obvious and does not admit of discussion. It happened while Shrout was actually engaged in performing work usual to and included in his employment.

[2] The serious question presented, and which is debatable, is, Was the injury suffered by Shrout one "arising out of the employment?" The act does not define this phrase, and no court has attempted to do so. It seems to be universally conceded that no comprehensive definition, or unerring guide, can be formulated which will determine with certainty the accidents embraced within it, and that, therefore, each case must be decided conformably to the specific facts it presents.

In the present case the injury is largely, if not wholly, traceable to the acts of the employer. The controversy in which it was received arose out of an incident which concerned his business, namely, an application to purchase gasoline; that it ultimately resulted in a personal difference, or that the accident was an unusual one, not likely to occur, does not deprive it of its business character or establish that it did not arise out of the employment. That would, indeed, be a severe rule to apply in a case where, as here, the injured employee was blameless, and at the time he was injured was in his accustomed place, pursuing his usual employment in the business of his employer.

It is equally true that the fact that the injury to Shrout was not an anticipated one, nor peculiar to the employment in which he was then engaged, does not defeat his claim

to compensation if otherwise it is within the provisions of the act.

In *State ex rel. Duluth Brewing & M. Co.* v. *District Court, etc.*, 129 Minn. 176, [151 N. W. 912], Mr. Justice Holt, in discussing the phrase "accidental injury arising out of the employment," appearing in the Minnesota Workmen's Compensation Act, which is substantially similar to the words "arising out of . . . the employment" found in our act, said, "the term cannot be restricted to injuries caused from anticipated risks of the service if the law is to be of the benefit intended." The injury to Shrout was not intentional, nor was it contemplated, which tends to place it in the category of an accident arising out of the employment, for, as stated by respondent, it can fairly be said that to some extent the risk of shooting, hold-ups, assaults, and the like, has in recent years become so closely associated with the garage business that it may be said that employment in such an industry is hazardous.

It has been said that "if there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of injury is foreign." (*Archibald* v. *Workmen's Compensation Commissioner*, 77 W. Va. 448, 451, [L. R. A. 1916D, 1013, 87 S. E. 791–793].) This language, and the rule it declares, is applicable here because there is no escaping the conviction that there is present a causal connection between the employment and the incident which resulted in the injury to Shrout. Moreover, such construction, and the resultant rule, is in compliance with the express mandate laid upon the courts by the terms of the act "that . . . it shall be liberally construed . . . with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment." (Workmen's Compensation, Insurance and Safety Act of 1917, sec. 69 [a].) We think it can be said that Shrout was injured, not merely because he happened to be in the garage at the time of the shooting, but because he was there, regularly employed, and, hence, exposed to all the dangers which might arise in the conduct and transaction of the business of his employer, including the reasonable protection of

186 Cal.—42

the latter's property and right to transact his business in an orderly manner.

The facts of the cases cited by the respective counsel are easily differentiated from those presented here, and, hence, none of them is exactly in point. They are in conflict touching the application and scope of the phrase "arising out of the employment," and a review of them could serve no useful purpose.

What are termed the "horse-play" cases, and the rule in them announced, have no application here. The injury sustained by Shrout was not due to skylarking or a frolic, but was received in the course of a series of incidents which had their initiative in a business transaction of his employer and while the latter was actively and justifiably engaged in defending his business. The significance of the presence of these conditions is not lessened by the fact that when the incident is scanned under calmer surroundings it might appear that the exigencies of the occasion did not warrant the shooting.

When Barr began shooting he voluntarily exposed Shrout as well as all other employees to the danger of being shot, and the fact that the injury which resulted was unintentional and purely accidental does not, in our opinion, prevent Shrout from recovering.

The court has given the facts presented upon this review a careful examination and painstaking consideration, and, considering all of the circumstances of the case, we think the evidence and the findings sustain the award, and it is, therefore, affirmed.

Sloane, J., Lennon, J., Lawlor, J., and Shaw, J., concurred.

Rehearing denied.

All the Justices concurred.