[Civ. No. 7093. First Appellate District, Division One.—December 31, 1929.]

FRIGIDAIRE CORPORATION (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CATHERINE MELKE et al., Respondents.

R. P. Wisecarver for Petitioners.

Edward O. Allen for Respondents.

KNIGHT, J.—While standing on the open platform of the railroad station at Reno, Nevada, awaiting the arrival of a train which he was about to board for San Francisco, Elmer Melke was struck and mortally wounded by a stray bullet fired by a police officer at a suspected criminal whom the officer was pursuing along the public street adjacent to the railroad station; and on account of Melke's death his widow and son were awarded compensation by the Industrial Accident Commission. Thereafter his employer Frigidaire Corporation and its insurance carrier Royal Indemnity Company instituted this proceeding in *certiorari* to have the award annulled upon the ground that the injury which resulted in Melke's death did not arise out of his employment.

The deceased was employed by said corporation as zone manager for Northern California and Nevada, his duties consisting in planning, supervising and inspecting the installation of refrigerator plants within his district. His headquarters were in San Francisco and he lived in Berkeley. Having finished his labors in Reno he proceeded to the railroad station intending to board the San Francisco train leaving there at 9 o'clock in the evening; and as he stood on the edge of the station platform adjacent to the street identifying his hand luggage which had just been deposited there by the hotel bus driver, he was struck by the wild bullet from the policeman's pistol and died soon afterward.

The commission's determination that Melke's injury happened in the course of his employment is not questioned; and in view of the fact that he was required to travel about from place to place and to be in and around public places and upon the public streets, petitioners make no claim that any injuries he might have received as a result of exposure to the ordinary perils of the street and of such public places would not have been compensable; but they contend that the danger of being shot by a police officer in the pursuit of a fleeing criminal cannot be classified as a street risk or a travel hazard; and that since Melke's injury was received from such source the same is not compensable under the terms of the Workmen's Compensation Act (Stats. 1917, p. 831).

We are of the opinion that the present situation is analogous to the one considered in the case of *Katz* v. *Kadans & Co.,* 232 N. Y. 420 [23 A. L. R. 401, 134 N. E. 330, 331], and must be governed by the legal principles declared therein. In that case a dairyman's chauffeur, while driving his employer's car along the street after having delivered certain dairy products, was stabbed without cause by an insane person who was running amuck upon the street; and it was claimed there, as it is here, that the accident did not arise out of a street risk. In holding to the contrary, the court said: "If the work itself involves exposure to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. This is the rule unequivocally laid down by the House of Lords in England: 'When a workman is sent into the street on his master's business, . . . his employment necessarily involves exposure to the risks of the streets, and injury from such a cause [necessarily] arises out of his employment.' (Finlay, L. C., in *Dennis* v. *White,* [1917] L. R. App. Cas. 479 [Ann. Cas. 1917E, 325, 15 N. C. C. A. 294].) So we have to concern ourselves only with the question whether claimant's accident arose out of a street risk. Cases may arise where one is hurt in the street, but where the risk is of a general nature, not peculiar to the street. Lightning strikes fortuitously in the street; bombs dropped by enemy aircraft do not expose to special danger persons in a street as distinguished from those in houses. (*Allcock* v. *Rogers,*

(1918) House of Lords [W. N. 96, 87 L. J. K. B. N. S. 693, 118 L. T. N. S. 386, 34 Times L. R. 324, 62 Sol. Jo. 421] 11 B. W. C. C. 149.) The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer. The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals, or violent madmen are afoot therein, as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad. Particularly on the crowded streets of a great city, not only do vehicles collide, pavements become out of repair, and crowds jostle, but mad or biting dogs may run wild, gunmen may discharge their weapons, police officers may shoot at fugitives fleeing from justice, or other things may happen from which accidental injuries result to people on the streets, which are peculiar to the use of the streets, and do not commonly happen indoors.''

The same reasoning was applied in a number of other cases. In *Greenberg* v. *Voit*, 250 N. Y. 543 [166 N. E. 318], the employee was sweeping the front stoop of a building in the performance of his duties as janitor and was killed by gangsters who passed through the street in an automobile shooting indiscriminately; and it was held that the injury and death arose out of the employment. In *Roberts* v. *Newcomb & Co.*, 234 N. Y. 553 [138 N. E. 443], the claimant was employed as outside man for a general printing firm, and while passing along Wall Street in New York in the performance of his duties he was injured as a result of a bomb explosion; and it was held that the injury arose out of and in the course of his employment and consequently was compensable. In *Mahowald* v. *Thompson-Starrett Co.*, 134 Minn. 113 [158 N. W. 913, 915, 159 N. W. 565], a teamster employed by a furniture company was driving along a public street in the discharge of his duties, and while passing along the street in front of a tall building under construction was killed by a heavy load of steel beams falling on him as it was being hoisted to the top of said building. It was held that the accident arose out of his employment, the court saying: ''Although the risk from the

accident in question may be said to be external to the employment, yet the employment caused a special degree of exposure to the risk."

The theory upon which compensation is awarded in the class of accidents above mentioned is that the causal connection between the employment and the injury, which is essential to make it compensable, consists in the fact that the employment requires the presence of the employee upon the street and the fact that the injury was caused by some human or mechanical instrumentality incidental to the use of the street. In other words, as said in *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 36 Cal. App. 280 [171 Pac. 1088, 1089], with respect to the facts of that case, "The causative danger was peculiar to the work in that had he [the employee] not been upon the street in the course of his duty he would not have been injured." And as held in *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 Pac. 744], the fact that the injuries to the employee are not of a kind to be anticipated nor peculiar to the employment in which he is engaged does not defeat the claim to compensation. (To the same effect is *General Accident, Fire & Life Assurance Corp.* v. *Industrial Acc. Com.*, 186 Cal. 653 [200 Pac. 419].) And under the modern rule now followed in England and all American jurisdictions except Massachusetts (see note II [d] 51 A. L. R. 514), the situation is not altered by the fact that the risk is one to which everyone else upon the street is also exposed (*Globe Indemnity Co.* v. *Industrial Acc. Com.*, *supra*), the vital question in such cases being "whether the employment exposed the workman to the risk by sending him on the street, common though such risks were to all on the street." (*Katz* v. *Kadans*, *supra*.)

In support of their position petitioners emphasize certain language used argumentatively in the decision in the case of *Storm* v. *Industrial Acc. Com.*, 191 Cal. 4 [214 Pac. 874]; but an inspection of the facts of that case discloses that the *dictum* relied upon has no application here, because that was not a "street risk" case, the employee having been injured while working indoors.

It is our opinion that the authorities hereinabove cited fully sustain the determination of the respondent commis-

sion that Melke's injury arose out of his employment. The award is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 30, 1930, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 27, 1930.