[L. A. No. 18655. In Bank. Aug. 3, 1943.]

CLARENCE E. TINGEY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Benjamin, Lieberman & Elmore for Petitioner.

Charles A. Son as Amicus Curiae on behalf of Petitioner.

Everett A. Corten and Fred G. Goldsworthy for Respondent.

CARTER, J.—After making an award of compensation to petitioner Clarence E. Tingey, the Industrial Accident Commission granted a rehearing and then found that petitioner was employed by Eastern-Columbia, Inc., but that he did not receive any injury arising out of or occurring in the course of his employment.

The employer is in the merchandising business and has branch stores throughout southern California. Tingey had been its display manager for all of its stores for fifteen years. His immediate superior was J. M. Sieroty, the vice-president and general manager of the employer corporation. Sieroty testified that Tingey's duties were "complete charge of our window displays, interior displays, our cabinet shop, that is a shop for the manufacture and maintenance of fixtures and equipment, as well as designing improvements for the general store operation. In addition to that Mr. Tingey helped us with lay-out of offices and practically all material pertinent to construction. Mr. Tingey also worked very closely with our architect on various building projects, from the smallest project that we have undertaken to the Ninth and Broadway building." Tingey had no office hours and was authorized to establish his own.

During the early part of December, 1941, a Mr. Weinsten

who was manager of one of the employer's branch stores discussed with Tingey plans for a new branch store to be opened by the employer of which Weinsten was to be the manager. Sieroty had discussed these plans with Tingey and Weinsten and had instructed Tingey "to lay out the store, allocate space for various departments according to Mr. Weinsten's program, and to develop the store windows."

On December 10, 1941, while carrying out that project Weinsten called at Tingey's office at 10 a.m. pursuant to an appointment he had made to discuss plans for the store. The office was located in the employer's building, on the lower floor of which it maintained its main store. The discussion continued until noon, the subject being about three-quarters covered, when the two men left the office to look at the show windows of the store in the building. At Weinsten's suggestion they proceeded across the street to a restaurant to have lunch where they continued the discussion for about one hour while they were having lunch. They left the restaurant to cross the street to Tingey's office. It was raining and the street next to the curb was flooded. They reached the center of the street by stepping on the bumper of a parked car. The other side of the street being flooded also, they were transported at their request to the curb on the bumper of a passing motorist. Tingey was injured while stepping from the bumper to the sidewalk at the entrance to the employer's store. Weinsten paid for the lunch.

The employer maintains a restaurant in the building in which Tingey had his office, but no privacy could be had there. Tingey commonly discussed business with fellow employees while at lunch. Sieroty testified that it did not make any difference to him whether the discussion between Weinsten and Tingey was at lunch, and if he had known they were going to do so he would have approved it, and that it was common practice for key employees like Tingey to discuss matters relating to the employer's business at lunch. Tingey's usual time for lunch was from 11 a. m. to 2 p. m. They left plans and papers which they had been discussing at Tingey's office when they went to lunch. Sieroty testified that Tingey was a "key" executive and "is regarded as such in the group, and also in regard to our time, we have none; he didn't punch a time clock and he was not regarded as an average employee. Q. Did it make any difference to you whether he discussed these plans or any business at his office

or during lunch time? A. No, sir. Q. Did his discussion of these plans with Mr. Weinsten at lunch meet with your approval? A. Well, specifically I didn't know they were discussing anything, I didn't know they were even there. If I may answer the question this way: it is not unusual for any of our executives to go out or for us to go out sometimes enmasse to discuss our problems at lunch time; quite a common occurrence to carry your business to the lunch table. Q. That is, it is more of a common occurrence with key employees as you mention, as Mr. Tingey, than it is with others, is that correct? A. Certainly. Q. And that met with your approval, did it? A. Had I known it, it would have met with my approval.''

 The only reasonable conclusion from the foregoing evidence, which is without substantial conflict, is, that the injury arose out of and occurred in the course of employment. Both Tingey and Weinsten held positions in which they were vested with a large amount of discretion as to their hours of work and the manner of performing it. The evidence unerringly points to the conclusion that that discretion extended to the performance by Tingey of his duties during his lunch hour. It was the practice of Tingey and other employees in the managerial classification to conduct the business of the employer at luncheon conferences. The only reasonable conclusion is that Tingey was impliedly authorized to conduct his employer's business while having lunch. Performing the duties in that manner would reasonably authorize the employee to be on the street. The place chosen for lunch was immediately across the street and near Tingey's office. When Tingey was injured he was returning from lunch to continue with his duties at his office. The means chosen for crossing the flooded street did not take them out of the course of their employment. The employer's business was discussed all through the lunch period; the only other discussion had to do with the weather. It is significant that Tingey's immediate superior testified that although he did not know that Weinsten and Tingey were conducting their employer's business during lunch, he would have approved such conduct had he known of it. That was in harmony with the practice of having conferences and discussing business at lunch periods common with employees holding positions similar to Tingey's. Where an employee holds a position which carries authority to exercise considerable discretion in the

performance of his duties, the scope of his operations which may come within the workmen's compensation laws is enlarged. (Campbell, Workmen's Compensation, sec. 142; *Stumar* v. *Industrial Acc. Com.*, 16 Cal.App.2d 429 [60 P.2d 557]; *Wiley* v. *Industrial Acc. Com.*, 16 Cal.App.2d 756 [60 P.2d 558]; *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40 [112 P.2d 615]; *Federal Mut. Liability Ins. Co.* v. *Industrial Acc. Com.*, 94 Cal.App. 251 [270 P. 992].) It may be said in this instance that rather than acting out of the course of his employment, Tingey was showing considerable diligence in furthering his employer's interests.

█ Respondent asserts that the going and coming rule bars recovery by Tingey; that the test to be applied is, what was the controlling reason for the employee being in the place he was at the time of the injury; that if the controlling reason was a purpose of his own, then he may not recover although he was also incidentally performing a service for his master; that Tingey's conduct in going to lunch falls within the latter category. The fallacy of that contention is plain. Here Tingey was acting with the implied permission of his employer in eating his lunch at the same time that he was performing his duties. While so acting the injury clearly arose out of and occurred in the course of his employment. Under those circumstances the test urged by respondent is not applicable. It has been held that the eating of lunch may be done as a part of and while performing a duty for the employer and while so doing the employee is acting in the scope of his employment. *Krause* v. *Swartwood*, 174 Minn. 147 [218 N.W. 555, 57 A.L.R. 611], involved a physician's office assistant directed to eat lunch near the office to enable her to answer telephone calls. █ The mere fact that an employee is performing a personal act when injured does not *per se* determine that the injury did not arise out of the employment, and he may be acting within the course of his employment when combining personal acts with the business of his employer where the employment contemplates that he shall. (See *Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]; *Employers'* etc. *Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]; *Associated Oil Co.* v. *Industrial Acc. Com.*, 191 Cal. 557 [217 P. 744]; *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 P. 744]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 P. 168].) The test is stated in *Employers'* etc. *Corp.* v. *Industrial Acc. Com.*, *supra*, 573:

"The true rule to be derived from the cases is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do." In the instant case the only reasonable conclusion is that it was not only contemplated by the employment that Tingey would eat lunch while performing his duties, but he was impliedly authorized to do so.

Respondent relies upon such cases as *London Guarantee & Accident Co., Ltd.* v. *Industrial Acc. Com.*, 190 Cal. 587 [213 P. 977], involving a discussion of the so-called special mission rule as an exception to the going and coming rule. But here we do not have involved a special mission for the employer, nor the question of which was the major purpose of the employee at the time. Furthermore, in the last cited case, the employee was not performing services for his employer while eating his lunch. In the instant case the employee was performing his duties while having lunch as contemplated by the employment, and as a part of such act it was necessary for Tingey to go to and from the restaurant. The place chosen was close to Tingey's office. It is not important that Tingey was not expressly directed by his superior to transact business during lunch in view of his discretion in performing his duties, and the implied authorization of the employer. For the same reason it is not significant that Weinsten asked Tingey to have lunch and paid for it, or that it was not paid for by the employer.

It must be remembered that any reasonable doubt as to whether the act of the employee is contemplated by the employment should be resolved in favor of the employee in view of the policy of liberal construction of the workmen's compensation laws. (*Goodrich* v. *Industrial Acc. Com.*, L.A. No. 18601, *ante*, p. 604 [140 P.2d 405] this day filed; *Employers' etc. Corp.* v. *Industrial Acc. Com., supra.*)

The award is annulled.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.