[Civ. No. 16396. Second Dist., Div. Two. July 13, 1948.]

PACIFIC INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and MAE RAYMOND, Respondents.

Herlihy & Herlihy for Petitioner.

T. Groezinger for Respondents.

MOORE, P. J.—February 20, 1947, Mae Raymond was in the employ of petitioner's insured, Rothschild & Kaufman Company, whose factory was located at 931 East Pico Street in Los Angeles. While sitting at and operating a power machine for her employer an explosion occurred at an electroplating establishment across the street at 922. Her machine was stationed about a foot from the west wall of her employer's building. She did not see or hear anything but a flash of light just before losing consciousness. On awakening a steel-framed window was pressed upon her head and shoulders. It had been blown from the west wall by the force of the explosion. It was 12 x 15 feet and enclosed steel sashes with panes reinforced with wire. Its momentum caused serious bodily injuries to Mrs. Raymond on account of which she applied to respondent commission for adjustment of her compensation. The extent of her injuries and the amount of the award are not issues on this review. Inasmuch as petitioner denies all liability by reason of the fact that the window was dislodged by the force of the explosion in the plating plant the circumstances of the event will first be scheduled.

The plating company's process required the presence of certain chemicals which, unless properly refrigerated, were, in combination, likely to produce a high velocity explosion. The use of such chemicals was prohibited in the zone (light industrial) of the plating works. It was not an exclusively industrial area; it contained some residences and light manufacturing plants. The zoning laws of the city as well as the statutes prohibited the manufacture, storage or use of such explosive acids as those kept by the plating company. (Ordinance 90500, Los Angeles Municipal Code, § 54.75; Health &. Saf. Code, § 12000.) It was established by satisfactory proof that the substances used by the plating plant were explosives as contemplated by the laws cited. Also a statute prohibited the possession, use and storage of explosives except only when completely enclosed in a tight container at an explosive manufacturing plant. (Health & Saf. Code, § 12150.)

The danger of the explosion was not anticipated, foreseen or suspected by the employer.

Petitioner as insurance carrier of the employer demands that the award made to the applicant be annulled on the ground that the latter's injury did not arise out of her employment but was the result of an unforeseen, fortuitous circumstance.

Concededly an employee's injury to be compensable by the employer must arise out of, and occur in the course of the employment and must result proximately therefrom; and at the time of its occurrence the employee must be performing "service growing out of and incidental to his employment." (Lab. Code, § 3600.) ██ It is the rule that so long as there is causal connection between the employment and the injury the workman should be awarded compensation for his injury, and that each case must be decided upon its own facts. (See *Pacific Employers Insurance Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 622, 628 [122 P.2d 570, 141 A.L.R. 798].)

██ The term "employment" as used in the statute does not contemplate the bare fact of the workman's presence and the performance of his labors at the time of the injury. To justify an award it is not necessary that the proof show that the immediate cause of his injury was a part of any work done for his employer. The theory upon which the workmen's compensation laws were enacted was that evidence should not be required to establish all the factors of the workman's environment, but that in order to receive an award he needs show merely that his work brought him within the range of danger by requiring his presence in the precincts of his employer's premises at the time the peril struck. (*Hartford Accident & Indemnity Co.* v. *Cardillo,* 112 F.2d 11, 15.) ██ That the employer was utterly without fault is not a material consideration for the reason that his liability "is not founded on any want of care on the part of the employer." (*Kimbol* v. *Industrial Acc. Com.*, 173 Cal. 351, 355 [160 P. 150, Ann.Cas. 1917E 312, L.R.A. 1917B 595].) Compensable injuries need not be of the kind anticipated by the employer or peculiar to the employment. (*Pacific Employers Insurance Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 622, 628 [122 P.2d 570, 141 A.L.R. 798].) It is sufficient that the injury results from a danger to which he was exposed as an employee. (*California Casualty Indemnity Exchange* v. *Industrial Acc. Com.*, 21 Cal.2d 461, 465 [132 P.2d 815].)

By the acts of 1911, 1913, and 1917 (Stats. 1917, ch. 586, p. 831), and by all subsequent statutes and constitutional amendments providing for employers' liability for injuries to their workmen, the social public policy has become fixed as to its remedial and humanitarian purposes. (*Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522, 529 [265 P. 195].) At the same time the judicial policy of liberally interpreting such public acts has effected such a complete system of workmen's compensation that any reasonable doubt as to whether an incident of an applicant's employment is contemplated as one entitling him to compensation must be resolved in favor of the employee. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286, 289 [158 P.2d 9, 159 A.L.R. 313; *Tingey* v. *Industrial Acc. Com.*, 22 Cal.2d 636, 641 [140 P.2d 410].) By the constitutional amendment of 1918 (art. XX, § 21) the Legislature was, in effect, required to create a statute to provide a system of workmen's compensation whereby to create and enforce a liability to compensate for injuries "sustained by the said workmen in the course of their employment, *irrespective of the fault of any party.*"

The "fortuitous and unforeseen circumstance" projected by petitioner herein as the sole cause of applicant's injuries was the explosion in the neighborhood of the employer's plant. The arguments are: (1) that if an employee while in the pathway of a dangerous instrumentality is injured the resulting injury does not arise out of his employment even though he was acting in the course of his employment; (2) the fact that a risk is common to the neighborhood of the employer's plant does not make the injury received thereby one arising out of the employment; (3) that his permitting his employees to work where they are more exposed to a particular risk of that neighborhood than are persons in another location does not constitute a compensable injury if the risk is unforeseen and not contemplated by the employer. Following each of such propositions petitioner presents a formidable list of authorities, some of which tend to support the argument. Each of them is distinguishable on its facts, or in some the authors of the opinion had not appropriated the social philosophy which supports the workmen's compensation statutes but were still fettered by the common law rules as to "proximate cause" involving personal injuries. (See *Truck Ins. Co.* v. *Industrial Acc. Com.*, 27 Cal.2d 813, 816 [167 P.2d 705].)

Not discounting the effectiveness of the explosion in setting in motion the forces that caused applicant's injuries it is to be remembered that she was in the building occupied by the industrial plant of her employer; that it contained windows and window frames that were circumstances or instrumentalities of the employment; that by virtue of the falling of one of the frames with its window upon applicant it thereby became a proximate, if not the proximate, cause of the injury. If it was the proximate cause the explosion was the remote cause. If the explosion was merely a proximate cause then it deserves no higher rank in the scale of causes than the steel window frame. The explosion itself did not affect applicant except by first removing the employer's window frame which crushed her body. The frame was one of the conditions or incidents of the employment, directly connected with it and out of which alone the injury resulted.

These views have had wide recognition for more than three decades and are the established law in many jurisdictions. In 1927, this court decided that the truck driver of a dairy who was injured while loading his truck in his employer's garage with milk from his employer's refrigerator was injured as the result of the falling of a brick wall of an adjoinjng two-story building through the roof of the garage. The fact that the wall's falling was caused by an earthquake did not effect an annulment of the award. (*Enterprise Dairy Co. v. Industrial Acc. Com.*, 202 Cal. 247 [259 P. 1099]; citing *Central Illinois Co. v. Industrial Com.*, 291 Ill. 256 [126 N.E. 144, 13 A.L.R. 967].) One of the early authorities to clarify the principle which controls in such a situation as that presented by the instant cause was decided by the British House of Lords. *Simpson v. Sinclair* arose in Scotland. Mrs. Simpson was the employee and was assigned to pack kippered herring in respondent's shed, made of corrugated iron. While she was so engaged a brick wall, 20 feet high, was being erected near the Sinclair premises. By reason of its own instability the wall fell upon the shed, burying the woman beneath the wreckage. The award by the sheriff-substitute was reversed by the Court Session in Scotland, but the House of Lords (1917) swept aside the contention that the woman's injuries were caused by the falling wall and that they did not arise out of her employment. The decision of the Lords was in substance as follows: The falling of the employer's roof could only happen in one place, and the presence of the applicant there was due to her employment which was the

distinctive cause of her injury rather than the falling of the wall. Only her employment gave rise to the circumstance of the accident. If, therefore, the statute, liberally construed, excludes the necessity of looking for remoter causes, and treats the employer rather as a mere insurer, the question is simplified. If the accident arose because the claimant was assigned to work in the particular spot where the roof fell then it arose out of the employment and there is no necessity to go back in the search for causes to anything more remote than the immediate event, to wit, the fall of the roof. There need be no other connection between the accident and the nature of the work in which the applicant was engaged. Behind the fact that the roof fell the courts cannot go. The limiting words in the act do not refer to any negligence of the employer that must be considered but they merely restrict the class of accidents against which he is to provide insurance. Applicant was injured because she was working in the shed in which she was employed to work. Whether the remoter cause of the roof's falling was the collapse of the neighboring wall or a stroke of lightning is immaterial. That she was required to work in the shed and was in consequence injured by an accident to its roof suffices to establish that her injury arose out of her employment just the same as if the fall of the roof had been occasioned by its inherent weakness. If by reason of the nature, conditions or obligations of the employment the workman is brought within the zone of special danger and so injured or killed the words "arising out of the employment" apply. (*Simpson* v. *Sinclair,* 1917, 10 B.W.C.C., 220, 226, 232.)

Paraphrasing the language of the Lords (p. 235) it may be said that Mrs. Raymond's service to her employer in its plant and not anywhere else brought her to the position of danger. She suffered a peril attached to the particular location in which her duty to her employer placed her.

In affirming an award to an employee injured when a roof, torn from the building in which he worked, fell upon him, the Supreme Judicial Court of Massachusetts, after observing that an injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment, held that an employee who in the course of his employment is *hurt by contact with something directly connected with his employment* receives a personal injury arising out of his employment; also, if he is injured by phys-

ical contact with some part of the building he works in, nothing further need be considered. If the wall falls upon him or if he slips upon the floor, there is no necessity for further inquiry as to why the accident happened. (*Caswell's Case* (1940), 305 Mass. 500 [26 N.E.2d 328].)

In a Louisiana case an award was made to the dependent sister of one Crawford, after the latter had been killed while at work in the hull house of defendant when it was struck and demolished by a cyclone. The matter was transferred to the Supreme Court of Louisiana. Contrary to the employer's contention that the accident did not arise out of the employment that court held that the phrase "arise out of" means that the "accident must be the result of some risk to which the employee is subjected . . . and to which he would not have been subjected . . . had he not been so employed." By reason of his employment deceased was required to be in the house that fell upon him. His death was due to the fact that his work necessitated his presence there. Therefore, under a liberal interpretation of the compensation act, the accident arose out of and was incidental to the employee's duties. The court there declared that the test, in cases where the accident originates from a force disconnected with the employment, is whether the employee is exposed to greater danger by reason of his assignments than that to which the public is subjected, whether the cause is an act of God or of a mundane inhabitant.

The same court's illustration in a former decision (*Kern v. Southport Mill*, 174 La. 432 [141 So. 19]) by the story of the ill-fated Titanic demonstrates the principle with a symbolism that cannot escape the comprehension of mediocrity. All on board were situated alike as to *time and place*, but not as to circumstance. Those who traveled for pleasure were present by choice; those who were aboard for business were there of necessity, and if any of the latter were injured, their injuries arose out of the necessity of their traveling on the Titanic. From the illustration it is clear that if one of the passengers had been required by his employer to be aboard the vessel the necessity of his presence would have entitled him to an award. From the analogy and the doctrine underlying the act the court concluded that if the employee was in pursuit of his employer's interests and not his own, and if his employer's business reasonably required him to be aboard the liner, his death arose out of his employment.

The conclusion derived in the Kern case was confirmed by the Harvey decision in which the court based its conclusions upon the fact that "the deceased by reason of his employment was required to be in a building which fell upon him; that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore . . . the accident arose out of, and was incident to the employment." (*Harvey* v. *Caddo De Soto Cotton Oil Co.*, 199 La. 720 [6 So.2d 747, 750].)

The Supreme Court of Ohio held that because the decedent was killed in a large house in which he found asylum from a storm his dependents were entitled to compensation. (*Industrial Commission of Ohio* v. *Hampton,* 123 Ohio St. 500 [176 N.E. 74, 76].)

In an appeal from an award to an industrial claimant whose injuries were due to her fall resulting from a cardiac condition, the New York Court of Appeals observed that accidental industrial injuries do "not always" arise from risks related to the employment. "When a clerk sustains injuries from a fall, through mischance, while working in a countinghouse, the employment is one of the factors which produces the fortuitous combination of circumstances which resulted in the accidental injury. The Workmen's Compensation Law . . . provides compensation for accidental injuries from any risk incident to the employment whether that risk be great or small, usual or extraordinary, and every risk is incident to the employment where the employment is a factor in the combination of circumstances out of which the accidental injury arose. The distinction is between the fortuitous exposure of a workman in the course of his employment to a general risk not related to the employment and the exposure of the employee to a risk that, because of the employment, the combination of circumstances which resulted in the accidental injury might arise." (*Connelly* v. *Samaritan Hospital,* 259 N.Y. 137 [181 N.E. 76, 77].)

Where a person had sustained injuries through a fall on a public street on which his employment had placed him his injuries were held compensable. (*In the Matter of Andrews* v. *L. & S. Amusement Corp.*, 253 N.Y. 97 [170 N.E. 506].)

In an action where the employee met death through the accidental burning of the building in which he was employed and the cause of the fire was not disclosed, the same court held that the hazard of "the burning of a particular place of work

is a special danger incident to employment in that place and therefore . . . the injury arose out of the employment." His employment stationed him in a place of potential danger from that source. (*Giliotti* v. *Hoffman Catering Co.*, 246 N.Y. 279, 283 [158 N.E. 621, 622, 56 A.L.R. 500].) Kindred sentiments were pronounced by the same court in a case where the claimant was injured while digging a hole in which to insert an iron beam. While bending over he was struck by a piece of cornice which fell from an adjoining building. The danger of its falling attached to the *spot* where the claimant was at work; it was peculiar to the situation, and a risk which arose from working alongside the building. Therefore the claimant was at work "within the zone of special danger and was therefore injured through an accident arising out of his employment." (*Filitti* v. *Lerode Homes Corp.*, 244 N.Y. 291 [155 N.E. 579].)

Petitioner's misconception of its rights in the instant proceeding is well illustrated by the arguments of counsel in the Filitti case whereby they attempted to analogize the position of Filitti to that of McCarter in *McCarter* v. *La Rock*, 240 N.Y. 282 [148 N.E. 523]. The latter while at work on a building was hit by a fragment of souvenir bomb which exploded on the adjoining premises with deadly effect to five others beside claimant. His award was annulled by the Court of Appeals because the statute requires "that the injuries must arise out of the employment . . . the employment in a reasonable sense must lead to the injuries and requires that there shall be some perceptible, causal connection between the employment and the accident causing the injuries. There was not . . . any such connection." In the instant cause there was such connection, to wit, the steel window frame in the very building in which applicant was at work. It was "incidental to the employment," a part of the employee's environment as she worked. In those cases in which the employee was denied an award because he was injured by a force which traveled through space to reach the body of the employee the annulment of the award resulted from the fact that neither the building in which he was at work nor any other incident of his employment joined with the traveling force to effect the injury. (See *Kowalek* v. *New York Consol. Ry. Co.*, 229 N.Y. 489 [128 N.E. 888]; *DeSalvo* v. *Jenkins*, 239 N.Y. 531 [147 N.E. 182]; *Auman* v. *Breckenridge Telephone Co.*, 188 Minn. 256 [246 N.W. 889]; *Whitley* v. *North Carolina State Highway Commission*, 201 N.C. 539 [160 S.E. 827]; *Bain* v.

*Travora Mfg. Co.,* 203 N.C. 466 [166 S.E. 301]; *Conaway* v. *Marine Oil Co.,* 162 La. 147 [110 So. 181]; *In re Harbroe,* 223 Mass. 139 [111 N.E. 709, L.R.A. 1916D 933]; *Knyvett* v. *Wilkinson Bros. Ltd.,* 87 L.J.K.B. 722; *Allcock* v. *Rogers,* 87 L.J.K.B. 639; *Ward* v. *Industrial Acc. Com.,* 175 Cal. 42 [164 P. 1123, L.R.A. 1918A 233].) It is not so here, where the window frame near the applicant crushed her.

 Petitioner contends that respondent commission exceeded its authority in finding that applicant sustained injury arising out of her employment in view of the stipulation that the injuries were caused by the concussion which was caused by the explosion. The law is that following a stipulation as to the facts the commission may either base its findings upon such stipulation or "take further testimony or make the further investigation necessary to enable it to determine the matter in controversy." (Lab. Code, §§ 5702, 5307(a); *Frankfort Gen'l Ins. Co.* v. *Pillsbury,* 173 Cal. 56, 58 [159 P. 150]; Cal. Admin. Code, § 10744.)

The writ is discharged; the award is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied July 30, 1948.

Petitioner's application for a hearing by the Supreme Court was denied September 8, 1948. Schauer, J., and Spence, J., voted for a hearing.