[Civ. No. 14352.   First Dist., Div. One.   Jan. 31, 1950.]

INDUSTRIAL INDEMNITY COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, BILL R. BAXTER et al., Respondents.

Leonard, Hanna & Brophy for Petitioners.

T. Groezinger for Respondents.

BRAY, J.—Writ of review seeking annulment of an order granting rehearing, and decision on rehearing, made by respondent Industrial Accident Commission. The original hearing resulted in an order that the claimant take nothing by reason of the claim filed, based on a finding that the death of the insured's employee did not arise out of the employment. Thereafter, the commission granted a rehearing and filed its decision on rehearing, which granted an award to deceased's minor child, Barbara Ann Baxter, based on a finding that the accident resulting in death did arise out of the employment.

### QUESTION PRESENTED

Is the death of an employee compensable where it occurred while she was discharging the duties of her employment, and was caused by her being accidentally struck by a shot fired at a customer by his irate wife?

### FACTS

There is no dispute as to the facts. Eleanor G. Baxter was employed by the Greenville Inn as comanager. Among her duties was that of relieving various employees in their duties, including relieving the bartenders in the hotel bar when they were away during meal periods.

On the evening of December 3, 1948, Mrs. Baxter relieved the bartender, Ernest Montoya, at about 7 p. m. A customer named John Walker came in, sat down at the bar and was served a bottle of beer by Mrs. Baxter. Receiving a bill in payment, Mrs. Baxter went to the office at the end of the bar, got change therefor from the safe, and returning to the cash register on the back bar, stood facing the cash register with her back to the bar and Walker. While Mrs. Baxter was in this position Katherine Walker, the wife of the customer, entered the premises, approached Walker, and after first cursing him, fired a bullet from a revolver. The bullet missed Walker, ricocheted off the bar and struck Mrs. Baxter in the back, inflicting the injuries which resulted in her death a few minutes later. There is no evidence as to what occurred between the husband and wife prior to her entry in to the bar, but it is reasonable to assume that her action was the culmination of an earlier quarrel between the two which had its inception away from the bar premises. Mrs. Baxter was not involved in any altercation, verbal or otherwise, or discussion with either of the quarrelling principals during the time in question. There is no evidence of any prior shootings or disturbances of any kind in the bar. Deceased left as her sole dependent a minor child, Barbara Ann.

DID THE ACCIDENT "ARISE OUT OF" THE EMPLOYMENT?

█ The Workmen's Compensation Act provides for liability of an employer for "any injury sustained by his employees arising out of and in the course of the employment . . ." (Lab. Code, § 3600.) Essential conditions include the following: "(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment. (c) Where the injury is proximately caused by the employment, either with or without negligence." A reasonable construction of the statute would be that (b) refers back to and elaborates on the phrase "arising . . . in the course of" and (c) refers back to and elaborates on the phrase "arising out of." So construed, there are two different requirements— one, that the *activity of the employee* at the time of the accident bears a sufficiently close relationship to his employment, and another, that the *accident* is proximately *caused* by the employment.

Admittedly Mrs. Baxter was "performing service growing out of and incidental to . . . [her] employment and . . .

[was] acting within the course of'' it. The serious question is whether the injury was ''proximately caused by the employment.'' In determining this question, it is advisable to consider the trend of the courts in determining what is considered ''proximately caused by the employment.''

When the Workmen's Compensation Act was first adopted in California the courts construed this phrase very narrowly. In spite of the requirement in the original act that ''it shall be liberally construed . . . with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment'' (Stats. 1917, p. 877, § 69)[1] the courts applied many of the narrow rules of ''proximate cause'' as laid down in the law of negligence, with the result that recovery by a workman for injuries received was considerably limited.

As time went on, however, the courts more and more adopted the spirit of the act and more and more began to throw off the restrictive bonds of the rules they had prescribed, and to interpret the act liberally so that the workman might receive compensation for injuries received in the course of his employment.

One of the departures was in ''street risk'' cases, of which *Frigidaire Corp.* v. *Industrial Acc. Com.*, 103 Cal.App. 27 [283 P. 974], is an example. There, the employee was required by his employment to travel between various cities by public transportation. While standing on the edge of a railroad station platform adjacent to a street, identifying his hand luggage which had just been deposited there by the bus driver, he was struck and killed by a stray bullet fired by a policeman at a suspected criminal whom the officer was pursuing along the said street. The court affirmed an award to the employee's dependents. Like most of the other street cases it attempted to distinguish risks peculiar to streets from those which apply both to streets and houses. ''The theory upon which compensation is awarded in the class of accidents above mentioned is that the causal connection between the employment and the injury, which is essential to make it compensable, consists in the fact that the employment requires the presence of the employee upon the street and the fact that the injury was

---

[1] Codified into section 3202 of the Labor Code, which reads: ''The provisions of Division IV [which includes § 3600] and Division V of this code shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.''

caused by some human or mechanical instrumentality incidental to the use of the street." (P. 31.) It paints a rather fearful picture of the dangers of being on a public street, thus (quoting from another case): " 'The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals, or violent madmen are afoot therein, as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad. Particularly on the crowded streets of a great city, not only do vehicles collide, pavements become out of repair, and crowds jostle, but mad or biting dogs may run wild, gunmen may discharge their weapons, police officers may shoot at fugitives fleeing from justice, or other things may happen from which accidental injuries result to people on the streets, which are peculiar to the use of the streets, and do not commonly happen indoors . . .' " (P. 30.) Although the opinion seems to place liability solely upon the fact that a street has more risks than other places, it quotes, apparently with approval, the following language from *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 36 Cal.App. 280 [171 P. 1088] : " 'The causative danger was peculiar to the. work in that had he [the employee] not been upon the street in the course of his duty he would not have been injured.' " (P. 31.)

Then there are the "horseplay" or "skylarking" cases. At first in California recovery was not permitted an employee who was injured through horseplay or skylarking of his fellow employees. (*Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682 [158 P. 212, L.R.A. 1916F 1164] ; *Fishering* v. *Pillsbury*, 172 Cal. 690 [158 P. 215], and many others.) But in *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], this rule was changed and the holding in *Coronado Beach Co.* v. *Pillsbury, supra,* and the other cases expressly overruled. The court pointed out that the Legislature intended that the Workmen's Compensation Act be liberally construed, and that in the recent decisions of the courts this policy had found repeated expression. It quoted from *Tingey* v. *Industrial Acc. Com.*, 22 Cal.2d 636 [140 P.2d 410], as follows (p. 289): "In the Tingey case, *supra,* the court declared that 'any reasonable doubt as to whether the act of the employee is contemplated by the employment should be resolved in favor of the employee in view of the policy of liberal construction of the workmen's compensation laws' (p. 641)" and from *California Cas. Ind. Exch.* v. *Industrial*

*Acc. Com.*, 21 Cal.2d 751 [135 P.2d 158] : " 'It is not indispensable to recovery, however, that the employee be rendering a service to his employer at the time of the injury. (Citations.) The essential prerequisite to compensation is that danger from which the injury results be one to which he is exposed as an employee in his particular employment.' " It then said (p. 294) : "Considering, as we may, the propensities and tendencies of mankind and the ordinary habits of life, it must be admitted that wherever human beings congregate, either at work or at play, there is some frolicking and horseplay. Accordingly, an injury sustained by a nonparticipating employee through the horseplay of fellow workers arises 'out of' and 'is proximately caused by the employment' within the meaning of section 3600 of the Labor Code."

Then we have cases where the courts have held that because the thing that injured the employee was an instrumentality of the employer, the injury is compensable even though the force which actually was responsible for the injury came from outside the employer's premises.

The first case on this subject was *Kimbol* v. *Industrial Acc. Com.*, 173 Cal. 351 [160 P. 150, Ann.Cas. 1917 312, L.R.A. 1917B 595]. There a dishwasher working in a restaurant was injured by the floor in a rooming house above the restaurant premises giving way and striking him. This floor was not included in the employer's lease, nor did he have any control whatever thereof. In holding that this injury arose out of the dishwasher's employment the court said that the giving way of the floor was due to the fact that the tenant of the rooming house unauthorizedly used it for storage purposes, and then stated (p. 354) : "But because of this unauthorized use of the floor above for storage purposes those below were in fact in danger of injury from a collapse of the floor, and in that sense the place in which Douglas [the injured employee] was required to do all his work was an unsafe place. The danger was one peculiar to that very place—an incident of the particular premises used as they were being used—and it is not unreasonable to say that Douglas was *specially* exposed to that danger by reason of his employment. Solely by reason of and in pursuance of such employment he was required to remain in this unsafe place exposed to this danger of a collapse of the ceiling of the room in which he was constantly at work." It would seem that the unauthorized use of the floor was a false factor, and that actually the award was

permitted because the dishwasher's employment caused him to be at a point which became a source of danger.

In *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 86 Cal. App.2d 726 [195 P.2d 919], the employee was injured when an explosion in a plant across the street caused a window in the plant where the employee was working to strike the employee. In supporting an award for the injuries received the court labors a bit in pointing out that the window which struck the employee was an instrumentality of the employer and for that reason constituted the proximate cause of the accident. It even said (p. 730) : "The frame was one of the conditions or incidents of the employment, directly connected with it and out of which alone the injury resulted." Again in *Enterprise Dairy Co.* v. *Industrial Acc. Com.*, 202 Cal. 247 [259 P. 1099], where an employee was injured by the falling, due to an earthquake, of a two story building adjoining his employer's garage, in which the employee was then working, the court held the employer liable, because the falling of such building through the garage roof broke milk bottles which the employee was handling, and hence "he was injured by the broken glass and not by the earthquake." While this and other similar cases labor somewhat to show that the actual substance which injured the employee was an instrumentality of the employer, a real analysis of the facts and rulings in these cases shows that actually the courts were allowing compensation because his employment brought the employee into what became a position of danger even though that danger was not, and in many instances could not, have been foreseen either by the employer or employee, and even though the risk was not peculiar to the particular location.

As far back as 1930, a writer in 18 California Law Review, page 562, said: "When an employment places an employee at any given place to do his work, indoors or outdoors, and the employee so placed is injured because at work in that spot, compensation should be awarded for the injury, except in the field of disease where it is needed to distinguish industrial from non-industrial diseases." The trend of the decisions in this state since that date has been to support that doctrine, although, as pointed out, the courts have been reluctant to use that language. An illustration of a case in which that doctrine is applied, but where the court went a long way around the barn to keep from expressing the doctrine, is *General Acc., F. & L. Assur. Corp.* v. *Industrial Acc. Com.*, 186 Cal. 653 [200 P. 419]. There an employee was repairing tires in his

employer's garage. In an altercation between his employer and two customers, in which the employee in nowise participated, his employer fired a shot from a pistol, apparently at one of the customers. This shot missed its target, struck the floor, and glancing, hit the employee, who was then in another part of the garage. The court sustained a compensation award as one "arising out of the employment." In doing so the court said that "there is present a causal connection between the employment and the incident which resulted in the injury . . ." because "it can fairly be said that to some extent the risk of shooting, hold-ups, assaults, and the like, has in recent years become so closely associated with the garage business that it may be said that employment in such an industry is hazardous. . . . We think it can be said that Shrout [the injured employee] was injured, not merely because he happened to be in the garage at the time of the shooting, but because he was there, regularly employed, and, hence, exposed to all the dangers which might arise in the conduct and transaction of the business of his employer, including the reasonable protection of the latter's property and right to transact his business in an orderly manner." (Pp. 657-658.) Just why the court should characterize the garage business as a "hazardous" one we are not quite able to understand. Actually, the real basis of the decision is shown by the quotation from *Archibald* v. *Workmen's Compensation Commissioner*, 77 W.Va. 448, 451 [L.R.A. 1916D 1013, 87 S.E. 791-793], which the court adopts (p. 657): " '. . . if there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of injury is foreign.' " Nor do we feel that in *Frigidaire Corp.* v. *Industrial Acc. Com.*, *supra* (103 Cal.App. 27), it was necessary for the court to paint such a dire picture of the hazards of appearing upon the public streets. Actually the decision in the Frigidaire case is based upon the fact that had the employee not been where he was in the course of his duty he would not have been injured. This is shown by the quotation we have heretofore set forth which the court took from the Globe Indemnity case (36 Cal. App. 280).

In the case at bar, if we desired to follow the specious reasoning in the cases which place liability on the fact that the instrumentality of the employer was the last one in a chain

of circumstances leading to the employee's injury, we could say that it was the bar, an instrumentality of the employer, which caused the bullet to ricochet and strike Mrs. Baxter. However, it is not necessary to do so. It is only necessary to hold that the death of Mrs. Baxter arose out of her employment because her employment required her to be in what turned out to be a place of danger.

The only California case in which there is a somewhat similar state of facts as those in our case, is *Associated Indemnity Corp.* v. *Industrial Acc. Com. and Fred Zurbuchen,* 43 Cal.App.2d 292 [110 P.2d 676], in which the court reaches a conclusion exactly opposite to the one reached by us. There a farm worker was struck in the neck by a bullet fired by a boy on adjacent premises who was shooting at a bird. The court reversed an award made by the Industrial Accident Commission in favor of the employee on the ground that there was no causal connection between the injury and the employment other than the mere fact that the employment brought the injured person to the place of injury. It based its decision largely upon the language in *California Casualty Ind. Ex.* v. *Industrial Acc. Com.,* 190 Cal. 433 [213 P. 257], a case in which an employee was killed while crossing the street to get into his parked truck after having stopped at a cafeteria for lunch and then at a cigar store. The court there held that although in the scope of his employment the injury did not arise out of the employment because at the moment he was not rendering any service to his employer. The language upon which the court in the Zurbuchen case relied mostly was: "There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury." (P. 436.) However, it is plain that the decision was based on the fact that it was not his employment that brought him to the place of injury but "His movements during the time he was getting his noonday lunch were dictated wholly by his own desires . . ." (P. 437.) "He had no business to transact for his employer in that vicinity." (P. 437.) Thus, the circumstances in the California Casualty case were not such as to make its language authority for the holding in the Zurbuchen case. It is true that in the Zurbuchen case the court distinguished its facts from the Frigidaire Corporation case, *supra,* by pointing out that the latter case came in the category of street risk cases. However, the absurdity of the distinction is realized when one considers that had the farm laborer in the

Zurbuchen case been driving his employer's truck down the road instead of being in the employer's field, when struck by the stray bullet, the court would have permitted compensation under the doctrine of the "street risk" cases. Thus, in our case, had Mrs. Baxter, instead of being in the barroom, been just outside of the door and going on an errand for her employer, there would be no question of her child's right to compensation. There is another ground upon which the Zurbuchen case could be distinguished from this, and that would be by applying the logic of the decision in *General Acc., F. & L. Assur. Corp.* v. *Industrial Acc. Com., supra* (186 Cal. 653), where the court, as we heretofore pointed out, characterized a garage as a place in which the employees run the risk of "shooting, hold-ups, assaults, and the like" (p. 657) and hence a hazardous place of employment. It is a well known fact that persons who are overcome by business and other worries, wife trouble, etc., are more likely to go to a bar to reflect on their situation than to a soda fountain, a grocery store or any other place. So, it might be said, in the logic of the last mentioned case, that irate wives who desire to shoot their husbands will be more likely to find them in bars than in other places, and hence working in a bar is at least as hazardous an occupation as working in a garage. However, as we do not agree with the premise in the General Acc., F. & L. Assur. Corporation case, we, of course, do not base our decision upon that ground here. We mention it to point out how unrealistic it is to attempt to find hazards as a basis of decision when the fact is that the decisions have really been based upon the fact that when a person's employment brings him in to a position which becomes dangerous and he is there acting in the scope of his employment, his injury is compensable. The decision in the Zurbuchen case is a throwback to the narrow interpretation of the Workmen's Compensation Act and against the trend of the later decisions, and hence should be disregarded.

The latest trend is shown by statements such as the following: "The theory upon which the workmen's compensation laws were enacted was that evidence should not be required to establish all the factors of the workman's environment, but that in order to receive an award he needs show merely that his work brought him within the range of danger by requiring his presence in the precincts of his employer's premises at the time the peril struck. . . . Compensable injuries need not be of the kind anticipated by the employer or pecu-

liar to the employment. . . . It is sufficient that the injury results from a danger to which he was exposed as an employee.'' (*Pacific Indemnity Co.* v. *Industrial Acc. Com., supra,* 86 Cal.App. 2d 726, 728.) This case also cites with approval the following from *Harvey* v. *Caddo De Soto Cotton Oil Co.,* 199 La. 720 [6 So.2d 747, 750] : '' '. . . that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore . . . the accident arose out of, and was incident to the employment.' '' (*Pacific Indemnity Co.* v. *Industrial Acc. Com., supra,* p. 733.) Referring to a Louisiana case (which is not cited) the court said (p. 732) : ''His death was due to the fact that his work necessitated his presence there. Therefore, under a liberal interpretation of the compensation act, the accident arose out of and was incidental to the employee's duties. The court there declared that the test, in cases where the accident originates from a force disconnected with the employment, is whether the employee is exposed to greater danger by reason of his assignments than that to which the public is subjected, whether the cause is an act of God or of a mundane inhabitant.'' '' 'It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes.' '' (*Pacific Emp. Ins. Co.* v. *Industrial Acc. Com., supra,* 26 Cal.2d 286, 293.) ''In summary, it is clear to the familiar observer, reporting objectively, that a trend continues toward liberalization of the Workmen's Compensation laws, through adjudicative and legislative processes . . .'' (1 Survey of California Law, p. 86.)

The award is affirmed.

Peters, P. J., concurred.

WARD, J.—I concur.

I agree that the order affirming the award is the correct disposition of this writ of review. The appellate courts of this state have adopted the rule that when the employment requires the employee to occupy a position that subsequently may be deemed to be a position of danger and an injury occurs to the employee such injury is not only an injury occurring in the course of employment but is one which arises out of the employment and is proximately caused by the employment. The main opinion cites sufficient authority to uphold that rule. Whether the rule is the result of discarding ''narrow'' views and adopting ''liberal'' construction is of

no consequence. It is an established rule and should be accepted and followed without *official* criticism.

I do not approve of some of the statements that appear in the main opinion, i. e.:

(a) That the use of the revolver was the culmination of an "earlier quarrel." In my opinion, this statement is based upon surmise and not upon any inference based on the evidence as shown in the record.

(b) That it is "a well known fact" that persons overcome by business or domestic worries are more likely to go to a "bar" to reflect on their situation than to "any other place." Based on my observation, this statement is not correct. During the oral argument, in response to a question along that general line the attorney for the Industrial Accident Commission specifically stated that the commission did not request a decision based upon that ground.

As I read the main opinion, it appears that reliance for the conclusion reached is based in part on the authority of recent decisions in "frolicking and horseplay" cases. The facts in those cases are not analogous and need not be mentioned in the present case. The "skylarking" cases arose from injuries caused through play instead of work by or between two or more employees. There is nothing characteristic of "frolicking" when a wife intrudes into a place of business with intent to kill her husband. At the time of the hearing of the present petition before the referee of the Industrial Accident Commission the woman who caused the death of the decedent herein was an inmate of the state prison for women at Tehachapi on a conviction of murder.

The mention of unnecessary true or false matters leads to confusion in future cases when referred to as precedent.